Robert L. ECHOLS, Plaintiff,

v.

Robert NIMMO, Administrator of
Veterans Affairs, Defendant.

No. K 82–379.

United States District Court,
W.D. Michigan, S.D.

April 26, 1984.

Ross Chapman, Kalamazoo, Mich., for plaintiff.

Carol Husum, Asst. U.S. Atty., Grand Rapids, Mich., for defendant.

## OPINION

ENSLEN, District Judge.

Plaintiff Robert L. Echols, an ex-employee of the Veterans Administration Medical Center in Battle Creek, Michigan, brought suit on November 24, 1982 against Robert Nimmo, Administrator of Veterans Affairs, alleging racial discrimination in promotion. 42 U.S.C. §§ 2000e–5, 2000e–16 (Title VII of the Civil Rights Act of 1964). The lawsuit has since been plagued with problems, as discussed in part *infra*.

Presently before the Court is Plaintiff's Motion to Compel Settlement Agreement and for Sanctions, filed March 22, 1984. On April 17, 1984, this Court conducted an evidentiary hearing and delivered an Opinion from the Bench granting Plaintiff's motion. This written Opinion is intended to supplement the oral Opinion. Also addressed herein is Plaintiff's request for attorney's fees; the issue having been taken under advisement after the April 17 hearing.

### I. The Settlement Agreement

■ It is a well established principle that the law, and public policy, favor the settlement of disputes without litigation. *Aro Corporation v. Allied Witan Company*, 531 F.2d 1368 (CA 6 1976), *cert. den.* 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976); *Clinton Street Greater Bethlehem Church v. City of Detroit*, 484 F.2d 185 (CA 6 1973); *Airline Stewards, etc. v.*

*American Airlines,* 573 F.2d 960 (CA 7 1978), *cert. den.* 439 U.S. 876, 99 S.Ct. 214, 58 L.Ed.2d 190 (1978). This principle is recognized as applicable to settlements in Title VII cases. *Airline Stewards, supra.* Because settlement agreements are favored, they will be upheld whenever possible. *Massachusetts Casualty Insurance Company v. Forman,* 469 F.2d 259 (CA 5 1972), *modified on other grounds,* 516 F.2d 425 (CA 5 1975), *cert. den.* 424 U.S. 914, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976). As stated by the Sixth Circuit in *Aro Corporation, supra* at 1372:

> Settlement agreements should be upheld whenever equitable and policy considerations so permit. By such agreements are the burdens of trials spared to the parties, to other litigants waiting their turn before over-burdened courts, and to the citizens whose taxes support the latter. An amicable compromise provides the more speedy and reasonable remedy for the dispute.

In today's litigious society, the expediency of a policy favoring settlements is obvious.

 A district court has the inherent power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it. *Aro Corporation, supra; Kukla v. National Distillers Products Company,* 483 F.2d 619 (CA 6 1973); *Massachusetts Casualty, supra.* This is true regardless of whether the agreement was entered into in the presence of the court. *Kukla, supra.* If, however, the material facts concerning the existence of an agreement to settle are in dispute, an evidentiary hearing must be held before entry of an order enforcing an alleged settlement agreement. At the hearing, the party seeking entry of the order should have the opportunity to prove the existence of a valid contract to settle, and the opponent should have the right to cross-examine and to present evidence. *Kukla, supra; Massachusetts Casualty, supra.* Such a hearing was conducted in this Court on April 17. Both parties were given a full opportunity to make arguments, introduce evidence, and present witnesses. Although attorneys for Plaintiff

and Defendant made oral arguments and produced evidence, neither chose to present witnesses.

 A settlement agreement is a contract. *Aro Corporation, supra.* Where there is a dispute as to the existence of a settlement agreement, general contract principles govern. Williston on *Contracts,* 3d, § 600A (1961). Under common law principles of offer and acceptance, an acceptance or confirmation which contains terms additional to or different from those of the offer constitutes a rejection of the offer and thus becomes a counter offer. *Aaron E. Levine & Company, Inc. v. Calkraft Paper Company,* 429 F.Supp. 1039 (ED Mich.1976); Calamari & Perillo, *The Law of Contracts,* 2d, p. 68 (1977). This is the rule in Michigan. *See, e.g., Harper Building Company v. Kaplan,* 332 Mich. 651, 52 N.W.2d 536 (1952); *Wayne State University v. Building Systems Corporation,* 62 Mich.App. 77, 233 N.W.2d 195 (1975).

 In *Banque de Depots v. National Bank of Detroit,* 491 F.2d 753 (CA 6 1974), the court noted that Michigan courts have adopted and repeatedly reaffirmed the basic tenet of contract law that a "meeting of the minds" upon all essential points is necessary to constitute a valid contract. The definition of "meeting of the minds" was found in *Goldman v. Century Insurance Company,* 354 Mich. 528, 93 N.W.2d 240 (1958), where the court held that the term means only that there must be a mutual assent, which is judged by an objective standard, looking at the expressed words of the parties and their visible acts. The *Banque de Depots* court went on to cite 1A Corbin, *Contracts,* § 106, p. 477 (1960), for the principle that if one party has knowingly or negligently misled the other by his or her use of words, he or she cannot escape responsibility by proving his or her own meaning and intention. I believe this to be in accord with *Kroeze v. Chloride Group Limited,* 572 F.2d 1099 (CA 5 1978), cited by Defendant, where the court stated that the offeror is the "master of his offer";

and may prescribe as many conditions, terms, or the like as he or she may wish. There, the court held that the offeror had prescribed specified conditions, and had done so "expressly, unambiguously, and unequivocally".

Calamari & Perillo, *supra*, p. 23, note that there may be a wide divergence between the meaning a person intended to convey with his or her expressions or conduct, and the meaning reasonably or unreasonably understood by the person to whom he or she was communicating. In interpreting this meaning, the objective theory of contracts is dominant, and the subjective intentions of the parties is ordinarily irrelevant. Professor Williston agrees, stating that it is ordinarily not the "real intent", but rather the intent expressed or apparent in the writing, which is sought. Williston on *Contracts, supra* at § 610.

In making a determination as to whether there has been a valid offer and acceptance in this case, the Court has considered the exhibits introduced at the April 17 hearing, the briefs with attachments addressing this motion, the remainder of the case file, and the arguments of counsel.

Plaintiff's Exhibit 1 is a February 25, 1984 letter from the Assistant United States Attorney (AUSA) representing Defendant to an attorney at the law firm representing Plaintiff. This letter was written in response to Plaintiff's request that a verbal settlement offer made by Defendant be submitted in writing. The letter states:

*In response to your request to submit the Veterans Administration's settlement offer in writing, I am confirming that the defendant is prepared to offer Mr. Echols the remedy provided by the EEOC in its decision. That is, a retroactive promotion, with back pay to a position of the same type, grade and general geographic location as Supervisory Social Worker, GS–12. The back pay is limited to the difference in pay between the GS–12 position and the position held by Mr. Echols during the period, February 5, 1979, the date of his*

*resignation, and the date that he is rehired.* This offer reflects merely that the agency has no statutory right of appeal to the District Court and also that the agency has expressed a willingness to reinstate Mr. Echols.

This offer should not be construed as a tacit acknowledgement that the selection of Mrs. Kinsey was improper as the record amply demonstrates that she possessed objectively superior credentials and experience, and that all applicants were aware that Mr. Scearce was charged with evaluating the qualifications of the candidates. Because the defendant believes that the administrative investigation was incomplete and that the EEOC based its decision on an erroneous interpretation of the facts and the law, the agency welcomes the opportunity for a complete examination of the circumstances surrounding the selection of Mrs. Kinsey.

*Because Mr. Echols exercised his free choice of appeal to the District Court, with its concurrent expenses, rather than to wait for the EEOC to reaffirm its decision, if indeed it would have reaffirmed its earlier decision, the government is not prepared to include attorney fees or costs in any settlement offer.* The defendant believes that unwarranted challenges to promotion based on merit should be discouraged and that this policy would best be served by trial on the merits. It does realize that the agency would have had no choice of forum had not Mr. Echols appealed to the District Court.

*It is my understanding that Mr. Echols might still appeal to the district court (sic) for attorney fees and claim that settlement was an issue resolved in his favor so that fees might be awarded. Because this offer is premised solely on Mr. Echols' statutory right to rely on the EEOC decision, the government would contest that Mr. Echols had a legitimate basis for his claim.*

This offer is made to enable Mr. Echols to avoid the further expense of trial

should he desire to be reinstated at the VA. Consequently, *this offer expires at the close of discovery on March 15, 1984* when Mr. Echols should have had the opportunity to fully assess the merits of his case. (Emphasis added.)

Plaintiff argues that this offer is unambiguous. The government—although indicating to the Court in Chambers at an April 4, 1984 settlement conference that the offer was unambiguous, and in a March 14, 1984 letter to Plaintiff that the offer "speaks for itself"—argued before this Court in its brief and orally at the April 17 hearing that the offer was ambiguous.

The Court has carefully examined the offer, and believes that it is unambiguous and unequivocal. Paragraph 1 clearly communicates the offer with regard to reinstatement, and states correctly the remedy provided to Plaintiff in a December 4, 1980 EEOC decision rendered prior to the initiation of this lawsuit (the VA's request for a second reconsideration of the EEOC decision was apparently the catalyst for the filing of this action). Paragraph 2 is merely a denial of liability on Defendant's part—a standard clause in settlement offers. Paragraph 3 provides that the government is not prepared to include attorney fees in the offer. Paragraph 4 plainly indicates recognition of the possibility that Plaintiff might still choose to pursue a claim for attorney's fees, and states that the government would oppose such a claim. It provides that a condition of the offer is that Plaintiff not claim that the fact that there was a settlement should be interpreted as having resolved the case in his favor. The final paragraph specifies that the offer expires on March 15, 1984.

On March 12, 1984, counsel for Plaintiff and Defendant met to discuss the settlement offer. According to counsel, a dispute arose as to Plaintiff's claim for attorney's fees. The government contended that if Plaintiff intended to pursue attorney's fees, there would be no settlement and the entire case would have to be tried on the merits. Counsel for Plaintiff indicated orally that Plaintiff was accepting the written settlement offer, but that attorney's fees would be pursued in accordance with the provisions of the settlement offer. Plaintiff also submitted to Defendant a paper entitled "Relief Requested, Revised", which listed Plaintiff's purported lost wages from the date he was not promoted through March 31, 1984 (the written offer provides for back pay from the later date of Plaintiff's resignation). This document also indicates that attorney's fees will be litigated.[1]

Plaintiff's Exhibit 2 is a March 13, 1984 letter from counsel for Plaintiff to the AUSA. It states:

*We want to make perfectly clear with this letter our acceptance of your offer of settlement as contained in your February 25, 1984 letter.*

In that letter, you provided the general framework for a settlement between the parties in this case exclusive of the issue of attorney fees. You further indicated that Mr. Echols "might still appeal to the district court for attorney fees and claim that settlement was an issue resolved in his favor so that fees might be awarded." You went on to indicate that the government would contest this claim for attorney fees if Mr. Echols would proceed with a demand for attorney fees. This separation of the attorney fee issue from the settlement of the merits of the case had also been verbally discussed by you with Mr. Denenfeld of our office in a manner which left no doubt as to your intentions concerning this settlement offer.

We acted on this February 25, 1984 letter offer of settlement and detrimentally relied by discussing the merits of the case with our client and with you by communicating to you our acceptance of the offer in a conference in my office yesterday. You were provided with a revised list of

1. *See,* Exhibit C, Defendant's April 2, 1984 Response to Plaintiff's Motion to Compel Sanc- tions and Enforce Settlement.

the claims of Mr. Echols on the monetary and as a specific application of the general framework of your settlement offer, and I enclose another copy of this list. We agreed that the specifics of the GS–12 position which Mr. Echols would assume should be communicated to us. You also agreed to examine the FICA—federal retirement implications of our settlement.

After we communicated to you our acceptance of your February 25 offer yesterday, however, you attempted to frame your settlement offer differently than that which is contained in your February 25 letter. You suggested that unless Mr. Echols would drop his attorney fee claim, all settlement offers would be revoked. This is a baffling position which is truly inconsistent with your letter of February 25, 1984, a letter upon which we had relied in communicating our acceptance. Your position is more difficult to understand in view of your relating to me the fact that your office had authority to settle this case on the terms as contained in your February 25, 1984 letter at least as early as November, which was prior to our preparation for trial in this matter on two occasions and prior to the new mound of discovery which you have placed on this case by adding 13 witnesses.

*I cannot reconcile your February 25, 1984 letter with your position which you took in my office yesterday. I can only go back to your letter at this point, which offer of settlement was open until March 15, 1984. This is a written acceptance of that offer, and confirms our oral acceptance which we gave to you yesterday. We will pursue the enforcement of our settlement agreement pursuant to that letter and*

*that acceptance.* We will pursue this position at any settlement conference with the court and in a motion for sanctions which will be filed. (Emphasis added.)

Again, this letter is unambiguous and unequivocal. Defendant's offer, as contained in the February 25 letter, was accepted by Plaintiff. The fact that there is additional language in the letter referring to the back pay and attorney's fee issues does not detract from the ultimate fact of acceptance.[2]

The government admitted in argument before this Court, and in a March 15 letter to Plaintiff attempting to close the offer, that its settlement offer remained open until March 15, 1984. The February 25 offer, as written, was never withdrawn. Thus, even if one were to view Plaintiff's list of revised relief requested as a counter offer or as a request to continue negotiations, Plaintiff abandoned that position when he accepted, verbatim, the February 25 offer.[3] Likewise, the language concerning the Plaintiff's confusion as to the government's March 12 position on attorney's fees is unimportant, since the attorney's fee portion of the February 25 letter "speaks for itself".

This Court has been presented with an offer and an acceptance, both of which are unambiguous and unequivocal. A contract was entered into between Plaintiff and Defendant on March 13, 1984. Therefore, the settlement agreement, as expressed in Defendant's February 25, 1984 letter, will be specifically enforced. Plaintiff is entitled to be reinstated and to receive back pay in accordance with the remedy provided for in the December 4, 1980 EEOC decision. Although this result may not be precisely

---

2. That Plaintiff's counsel abandoned his back pay issue is clear from the wording in the last paragraph of his acceptance. He "can only go back to the February 25, 1984 letter", and accepts. That Defendant's counsel does not treat Plaintiff's statements of the 12th nor his letter of the 13th as a counter offer is clear by her letter of March 14, and her March 15 letter withdrawing the February 25 offer.

3. That Plaintiff's position regarding back pay was not viewed by the government at the time as a counter offer is apparent from Defendant's March 15 letter, which states only that the offer to reinstate "expired on this date since you choose to litigate attorney fees". Unfortunately, the government's March 15 letter came too late; the offer had already been accepted.

what the parties subjectively intended when they entered into negotiations and formulated the offer and acceptance, they nevertheless will be held to their bargain.

## II. Sanctions

■ Plaintiff argues in the alternative that the settlement agreement should be enforced pursuant to this Court's sanction powers. Plaintiff relies upon Local Court Rules 47(c) and 49(a) in support of this argument. These provisions state:

Rule 47(c). *Failure to exercise reasonable diligence in effecting settlement* —Whenever the Court finds that a party or attorney has acted in bad faith or has failed to exercise reasonable diligence in effecting the settlement of a case at the earliest practicable time, the Court may impose upon such party or attorney the jury costs, including mileage and per diem, and attorneys' fees. The Court may, in its discretion, hold a hearing to inquire into the facts of the alleged bad faith or failure to exercise reasonable diligence and may impose such sanctions as it may deem appropriate including those provided for in Rule 19 and Rule 49.

Rule 49(a). *Failure to be prepared for trial*—Failure of counsel to be prepared for trial at the time set may be considered an abandonment of the case and an appropriate order may be entered against the defaulting party with respect to either a specific issue or the entire case. The Court may also impose other appropriate sanctions including assessment of costs and attorneys' fees against the defaulting party and, in the case of a jury trial, payment of one day's jury fees.

The failure of counsel to submit trial briefs, proposed voir dire questions, proposed jury instructions, proposed findings of fact and conclusions of law, or motions *in limine* on the date previously ordered by the court shall be deemed failure to be prepared for trial.

The record indicates that the Plaintiff submitted a proposed offer of settlement to Defendant in July of 1983. Prior to that time, it appears that no movement by either party toward settlement negotiations occurred. At the July 15, 1983 pretrial before this Court, the AUSA in attendance indicated that there was a possibility of settlement. Nevertheless, no counter offer to Plaintiff's settlement offer was made until January of 1984, when the AUSA currently in charge of the case verbally offered the remedy awarded by the EEOC back in 1980 (the same offer extended in writing on February 25, 1984).[4] It is uncontested that the previous AUSA handling the case had settlement authority at least as of November of 1983, yet no attempts to effect settlement occurred. Indeed, Plaintiff's efforts at negotiation were met with unreturned letters and phone calls, and at least one cancelled meeting.

At the July 15, 1983 pretrial, this Court ordered that proposed findings of fact, conclusions of law, and trial briefs be submitted by the parties on or before October 17, 1983. Plaintiff complied with this Order; Defendant did not. A photocopy of Defendant's proposed findings of fact and conclusions of law was received by this Court on January 23, 1984—more than three months late. It appears that the original was never filed. Defendant's trial brief was finally filed on March 1, 1984— nearly five months after the Court ordered due date.

This case has been scheduled for trial on bench terms commencing October 24, 1983 and January 3, 1984. Adjournments have been due to the Court's calendar. Prior to the filing of the instant motion, trial was scheduled to commence April 16, 1984. Subsequent to the last adjournment of trial, Defendant on January 23, 1984 filed a Motion to Amend Pretrial Order to add 2 additional witnesses, and on January 27,

---

**4.** The Assistant United States Attorney who was in charge of this case in July of 1983 states by way of affidavit that she rejected Plaintiff's offer. The attorney does not reveal when, or how, such rejection was communicated.

1984 filed a Motion to Add 11 Additional Witnesses and to Re-Open Discovery. The Court, believing addition of the witnesses to be in the interests of justice, granted Defendant's motions by Opinions and Orders dated January 30, 1984 and February 16, 1984, respectively.[5]

Obviously, Defendant's failure to comply with this Court's Order regarding submitting proposed findings of fact, conclusions of law, and trial brief is, standing alone, a failure to be prepared for trial in violation of Local Court Rule 49(a). Moreover, had the government complied with this Court's Order it would have discovered the need for 13 additional witnesses long before January of 1984, and of even more significance, would have been sufficiently educated as to the circumstances involved in this case so as to have made a decision at that time regarding settlement. Since Defendant's ultimate settlement offer is identical to the EEOC remedy of 1980, it is reasonable to assume that this same offer would, and perhaps should, have been made in November of 1983—before Plaintiff was forced to conduct discovery of 13 additional witnesses. Instead, Defendant's failure to adequately prepare impeded the progress of this case, resulted in greater burden to Plaintiff, and resulted in no settlement offer being made until January—February of 1984, when the AUSA now handling the case conducted an adequate appraisal of the file. The fact that the trial was adjourned by the Court does not detract from the obvious value in Defendant and its counsel being prepared for trial, and the fact that an Order of this Court was violated.

Defendant received a good faith settlement offer from Plaintiff in July of 1983. Defendant had authority to make the settlement offer now at issue at least as early as November of 1983. Defendant, probably due to the lack of preparation described above, failed to make that offer. While it should not be disputed that a party has no obligation to make settlement offers in cases which it believes are without merit and must be litigated, this Court cannot ignore the fact that a settlement offer was ultimately made, and that the offer was identical to that awarded and affirmed once by the EEOC. Had Plaintiff not filed suit in this Court, and had the EEOC again affirmed its decision, Defendant would have had no means by which to appeal that award. Under these circumstances, the Court concludes that Defendant has failed to exercise reasonable diligence in effecting the settlement of this case at the earliest practicable time, in violation of Local Court Rule 47(c).

Recognizing that the value in the United States District Court for the Western District of Michigan having promulgated Local Court Rules will rapidly diminish if they are not consistently and strictly enforced, the Court finds in Local Court Rules 47(c) and 49(a) an alternative basis upon which to order specific enforcement of the settlement agreement as contained in Defendant's February 25, 1984 offer.

### III. Attorney's Fees

42 U.S.C. § 2000e–5(k) (hereafter referred to as § 706(k)) provides:

In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

This statute is given a liberal interpretation, in line with the Congressional intent to facilitate the bringing of discrimination complaints. *Sullivan v. Com. of P. Dept. of Labor, etc.*, 663 F.2d 443 (CA 3 1981), *cert. den.* 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982). Therefore, a prevailing plaintiff under § 706(k) is ordinarily to be awarded attorney's fees in all but special circumstances. *Christiansburg Garment Company v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

---

5. In retrospect, the Court now believes the foreseeable prejudice to Plaintiff caused by the inexcusably late addition of these witnesses should have resulted in denial of Defendant's motions.

 Courts have stressed that an award of attorney's fees under § 706(k), or its companion provision 42 U.S.C. § 1988, is not limited to situations where the plaintiff prevails by a judgment after trial. Rather, attorney's fees have been awarded where the parties have settled without resort to trial on the merits. *See, Sullivan, supra; Smith v. La Cote Basque*, 519 F.Supp. 663 (SD NY 1981), *app. dismissed*, 681 F.2d 802 (CA 2 1981); *Parker v. Matthews*, 411 F.Supp. 1059 (D DC 1976), *aff'd*, 561 F.2d 320 (CA DC 1977); *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980).[6]

In *Johnston v. Jago*, 691 F.2d 283 (CA 6 1983), the Sixth Circuit addressed the issue of attorney's fees in a 42 U.S.C. § 1983 action which was settled prior to trial. Although in the context of § 1988, the court indicated by way of footnote that § 706(k) of Title VII was identical and case law interpreting one of these statutes was applicable to the other. The court went on to uphold an award of attorney's fees in the federal civil action, despite the fact that the settlement had been achieved in a separate state proceeding before the Ohio Personnel Board of Review.

In articulating the standard to be applied in circumstances such as involved herein, the Sixth Circuit in *Johnston* indicated that it was "beyond dispute" that a plaintiff may be considered a "prevailing party" and thus recover attorney's fees despite the fact that the case concludes in a settlement. *Id.* at 285. The court adopted a two-pronged test for determination of a "prevailing party":

(1) "plaintiff must demonstrate that his or her lawsuit was causally related to securing the relief obtained. This determination is factual."

(2) "plaintiff must establish a minimum basis in law for the relief secured." Although this inquiry is legal, a full trial on the merits is not required. "Rather, the trial court need only consider whether plaintiff's claim is 'frivolous, unreasonable or groundless'." *Id* at 286.

The Sixth Circuit opined that this test strikes the proper balance between rewarding the filing of wholly frivolous lawsuits on the one extreme and, on the other extreme, withholding fees unless the plaintiff's claim is fully evaluated on the merits. *Id* at 286.

In *Citizens Coalition for Block Grant Compliance, Inc. v. City of Euclid*, 717 F.2d 964 (CA 6 1983), in the context of the Equal Access to Justice Act's authorization of attorney fees for the "prevailing party", 28 U.S.C. § 2412, the Sixth Circuit explained the first prong of the *Johnston* test as a determination whether, as a matter of fact, the plaintiff's lawsuit was a necessary and important factor in achieving the relief desired. The second prong was said to require a determination whether the relief obtained resulted from a gratuitous act on the defendant's part, or whether the defendant's acts were mandated by law. "When a plaintiff's case is 'frivolous, unreasonable or groundless,' ..., any concessions the defendant may have made by way of settlement are considered gratuitous and attorney's fees are not awarded." *Id.* at 966.

In this case, the parties have agreed that the fact that there has been a settlement will not be used as an issue resolved in Plaintiff's favor. Therefore, this Court treats the settlement agreement as containing no admission of liability on the part of the government, and does not consider the fact of settlement as a factor in determining whether Plaintiff is a "prevailing party" within the meaning of § 706(k). With this limitation in mind, the Court will now apply the two prongs of the *Johnston* test to the circumstances at hand.

---

**6.** Plaintiff argues that the government is indicating that it will *never* settle civil rights actions where the plaintiff intends to pursue attorney's fees. The government, although given the opportunity, did not refute this claim; nor did it even respond to the allegation. Since such a negotiation posture by the government would clearly contravene the public policy behind the attorney's fee provisions of the civil rights acts, the Court merely expresses its hope that Plaintiff's allegation is unfounded.

The first prong of *Johnston* requires a causal connection between this lawsuit and the relief obtained. The relief obtained was the same relief awarded by the EEOC in 1980. Following the EEOC determination, the government asked for reconsideration. Following affirmance by the EEOC, the government again asked for reconsideration. At that point, nearly three years had elapsed since Plaintiff filed his EEOC charge. Understandably frustrated, Plaintiff pursued his statutory right to relief in this Court. Only after one year of proceedings in this Court did Plaintiff finally obtain the relief originally ordered by the EEOC. The factual record supports the conclusion that this Court action, and the efforts of Plaintiff's attorney, were a necessary and important factor in Plaintiff finally obtaining at least part of the relief to which he believes he is entitled.

The second prong of *Johnston* requires a determination that there is "some minimum basis in law for the relief secured." In other words, this Court must determine whether, as a matter of law, Plaintiff's claim is frivolous, unreasonable, or groundless. Although the government insisted at the April 17 hearing that this determination requires a trial on the merits, the Sixth Circuit has expressly held to the contrary. *Johnston, supra.* Since this Court is frequently required to make determinations as to whether claims are frivolous in other contexts, there is no reason to believe this Court cannot do so based upon the record herein.

An examination of the December 4, 1980 EEOC decision, the case file, and relevant case law, convinces this Court that Plaintiff's basic claim—that he was not promoted due to his race—is not patently frivolous, unreasonable, or groundless. Plaintiff has sufficiently demonstrated to the Court that there is "some minimum basis in law" for the relief obtained.[7]

Because Plaintiff has satisfied both prongs of the *Johnston* test, the Court finds that he is a "prevailing party" within the meaning of § 706(k). Therefore, reasonable attorney's fees will be awarded.

The Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), recently addressed the question of the "reasonableness" of attorney's fees; specifically in the context of a plaintiff who prevailed only partially on his civil rights claims. The court held:[8]

the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 USC § 1988.... Where the plaintiff has failed to prevail on a claim that is distinctive in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only the amount of fees that is reasonable in relation to the results obtained. *Id.* at 103 S.Ct. 1943, 76 L.Ed.2d 54.

Plaintiff, in his November 24, 1982 Complaint, seeks reinstatement, back pay from the date he was not promoted (May of 1978) to the present, costs and attorney's fees, and other "appropriate" relief. In the Pretrial Order filed July 18, 1983, Plaintiff claims back pay from May of 1978 to the present, compensation for lost promotional opportunities, interest on the back pay award, judgment interest, reinstatement with forward pay for lost promotional opportunities and affirmative action in promotions, punitive damages, and attorney's fees. The relief Plaintiff has ultimately

---

7. *See, e.g., McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

8. The Court, in footnote 7 at 103 S.Ct. 1939, 76 L.Ed.2d 50, indicated that the standards regarding "reasonable" attorney's fees are equally applicable in Title VII actions.

received is partial; including reinstatement and back pay from February 5, 1979 (the date of his resignation) to the date he is rehired.

The Court has considered the significance of the overall relief obtained by Plaintiff, in relation to the hours reasonably expended on the litigation and a reasonable hourly rate for those efforts. In making this determination, the Court was somewhat hampered in that Plaintiff's attorney did not indicate in his affidavit of attorney fees and costs the amount of time spent on individual claims for relief. Nevertheless, the Court makes the following rulings with respect to an award of attorney's fees that is reasonable in light of the level of success obtained by Plaintiff:

■ 1. Attorney's fees at a rate of $55 per hour for the efforts of a relatively inexperienced attorney, $70–75 per hour for the more experienced attorneys working on this case, and paralegal fees at one-half of attorney rates, are reasonable and in accordance with community standards.[9]

■ 2. A charge of ¼ hour for each telephone call, regardless of the brevity of the call, is imprecise. A more precise method is to divide the hour into 10 6-minute segments, for example, and charge accordingly for each phone call. This method is distinctly preferable to billing ¼ hour for a 2–3 minute phone call. Therefore, the Court believes it reasonable to eliminate 16 hours from Plaintiff's attorneys' total claim of 375 hours expended, leaving a remaining claim for 359 hours.

3. Of the total 375 hours billed by Plaintiff's attorneys, at a cumulative rate of slightly more than $70 per hour (for a total of $26,576.25), the Court believes a reduction of 168 hours, in addition to the 16 hours specified in ¶ 2, is reasonable. This reduction reflects the Court's opinion as to the reasonable number of hours necessary to accomplish the tasks outlined in Plaintiff's attorney fee affidavit, and the Court's opinion as to the relationship of the relief obtained to the number of hours expended. Nearly all of Plaintiff's incurred attorney fees after the January, 1984, addition of 13 government witnesses are included in this award, since Plaintiff could not reasonably have known which portion of his claim the 13 new witnesses would address, and because had the government extended its November authority in November, none of the time would have been expended by Plaintiff's counsel.[10]

4. A reasonable attorney fee award for Plaintiff, after a reduction in accordance with ¶¶ 2 and 3 above, is $13,536.17.

5. Plaintiff's costs of $3,138.17 are reasonable, and are awarded in full.

Because Plaintiff is being awarded reasonable attorney's fees under § 706(k) of Title VII, the Court finds it unnecessary to consider an award of attorney's fees under this Court's Local Court Rule sanction powers, as requested by Plaintiff.

---

9. The government did not contest that the rates charged by Plaintiff's attorneys were reasonable; nor did it ask for a continuance to obtain evidence on this issue.

10. In reaching a reasonable figure for attorney's fees, I have drawn upon my experience as an attorney who practiced in this community for over 19 years, and have considered the amount of time in a general sense necessary to prepare a Title VII case like this for trial; the methods of time-keeping and billing by attorneys using the quarter-hour method; the unusual difficulty encountered by Plaintiff's counsel in late 1983 with unreturned phone calls, a failure to appear at settlement conference, etc.; the unusual legal costs to Plaintiff by the very late addition of 13 witnesses; and a very careful reading of the attachment (Plaintiff's statement of account) attached to his affidavit. I fully realize that a precise financial analysis is impossible.