765 F.2d 147
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
YUK SHAU MUI, PLAINTIFF-APPELLANT,
v.
ALLEN C. WING AKA WING QUIE CHIN, DEFENDANT-APPELLEE.
 NO. 84-3415
 United States Court of Appeals, Sixth Circuit.
 5/6/85
 
 Appeal from the United States District Court for the Northern District of Ohio
 Before: KENNEDY and MILBURN, Circuit Judges; and GUY, District Judge.*
 PER CURIAM.
 
 
 1
 This is an appeal from the order of the District Court enforcing a settlement agreement reached by the parties for the purpose of terminating this litigation. Plaintiff-appellant Yuk Shau Mui is a Chinese woman in her seventies, who claims to have been married to the appellee Allen C. Wing in China in 1927. The appellee left China permanently for the United States in 1932, where he married the present Mrs. Wing in 1946. One son allegedly was born of this marriage, Hong Bin Chin. Although Wing acknowledges that a marriage took place and that Hong Bin Chin is his son, he denies that the appellant is the woman whom he married and mother of that son. Appellant came to the United States in 1969. From 1969 to 1980 she lived in New York City; since 1980 she has lived in Champaign, Illinois.
 
 
 2
 This case commenced on August 28, 1979, when the appellant filed a complaint in District Court seeking back and future support for herself, back child support for her son, damages for slander arising out of Wing's denial that they were married, and civil damages for Wing's alleged violation of the Ohio statute outlawing bigamy. She also has a divorce case ongoing in state court in Illinois.[1] On November 13, 1979, Wing filed a motion to dismiss all but the slander claim for lack of jurisdiction, primarily on the basis of the domestic relations exception to the diversity jurisdiction of the federal courts. This motion was denied on March 30, 1983, and the case scheduled for a summary jury trial on June 14, 1983. On that date, a summary trial was held, the jury finding that there was insufficient evidence to establish that plaintiff and defendant were ever married. Settlement discussions were then held between the parties, their representatives, and the District Judge, concluding in a settlement between the parties. The court thereupon entered the following order, dated June 15, 1983:
 
 
 3
 A Summary Jury Trial was held in this action on June 14, 1983. Immediately thereafter, the parties settled this matter during negotiations conducted under the auspices of this Court.
 
 
 4
 The parties are hereby instructed to prepare a separate stipulation, which shall be filed with this Court. In the event the terms of the stipulation are not consummated within one hundred twenty days, either party may move to vacate, modify, or amend the terms of the stipulated settlement.
 
 
 5
 This action is terminated.
 
 
 6
 No stipulation was filed with the District Court,[2] nor is there a transcription in the record before this Court of the settlement proceedings or agreement reached between the parties on June 14. On October 12, 1983, appellee filed a motion for an order enforcing the settlement agreement, to which he attached an unsigned stipulation purporting to embody the terms of that agreement. The terms of settlement were that the defendant would deposit $27,500 with the court, to be paid out upon delivery of the certified copy of a judgment entry of divorce, each of the parties agreeing to release the other from all marital and property rights and claims and all causes of action arising out of or connected with the subject matter of either her federal or state court case.[3] She opposed the motion to enforce settlement, contending that she did not understand and never intended the settlement of her federal case to affect her state case. On April 30, 1984, the District Court entered its order enforcing the settlement agreement.
 
 
 7
 'The power of a trial court to enter a judgment enforcing a settlement agreement has its basis in the policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation.' Kukla v. National Distillers Products Co., 483 F.2d 619, 621 (6th Cir. 1973). 'Even in those instances in which the court's original jurisdiction may have been questionable, it has jurisdiction over settlement agreements, the execution of which renders the prior controversy academic.' Aro Corp. v. Allied Witan Co., 531 F.2d 1368, 1371 (6th Cir.), cert. denied, 429 U.S. 862 (1976). 'Although a district court has inherent power to enforce an agreement to settle a case pending before it summarily, when opposition to enforcement of the settlement is based not on the merits of the claim but on a challenge to the validity of the agreement itself, the parties must be allowed an evidentiary hearing on disputed issues of the validity and scope of the agreement.' Mid-South Towing Co. v. Har-Win, Inc., 733 F.2d 386, 390 (5th Cir. 1984); accord Kukla, supra; Autera v. Robinson, 419 F.2d 1197 (D.C. Cir. 1969); Echols v. Nimmo, 586 F. Supp. 467, 469 (W.D. Mich. 1984).
 
 
 8
 Applying the above principles to the instant case, appellant has raised sufficient doubts about the terms of the settlement agreement to warrant an evidentiary hearing. Although a hearing is unnecessary where the terms of the agreement are clear and unambiguous and thus its enforcement is determinable solely as a matter of law, Aro Corp., 531 F.2d at 1372, such is not the case in this instance, for two reasons.
 
 
 9
 First, appellant has made specific allegations under oath which, if substantiated, support her position that the agreement as enforced by the District Court was not that to which she agreed. She states on appeal that neither she nor the persons she had present during negotiations to translate for her were very conversant in the English language, a fact which is more or less acknowledged in the Court's enforcement order. See Autera, 419 F.2d at 1201 (fact that plaintiff did not speak English well supported her claim that she did not understand terms of settlement). 'A settlement agreement is a contract. Aro Corporation, supra. Where there is a dispute as to the existence of a settlement agreement, general contract principles govern. Williston on Contracts, 3d, Sec. 600A (1961).' Echols, 586 F. Supp. at 469. Under Ohio law, 'both parties must have a clear understanding of the terms of an agreement and an intention to be bound by its terms before an enforceable contract is created.' Arnold Palmer Golf Co. v. Fuqua Industries, Inc., 541 F.2d 584, 587 (6th Cir. 1976).
 
 
 10
 Second, although the District Court noted in its enforcement order 'that the parties, though not truly conversant with the English language, have had this oral agreement and mutual release explained to them, and had agreed in open Court that this settlement is complete and involves a compromise of all disputed claims,' there is nothing in the record before this Court to enable it to conduct a meaningful review of the District Court's finding. '[T]he basis of every judgment must be so reflected in the record as to make it capable of intelligent appellate review.' Writz v. Young Electric Sign Co., 315 F.2d 326, 327 (10th Cir. 1963); accord Evans v. Sheraton Park Hotel, 503 F.2d 177, 188 (D.C. Cir. 1974). Although ordinarily it is the responsibility of the appellant to provide a transcript of lower court proceedings necessary to support its claim, Fed. R. App. P. 10(b), and appellate rule 10(c) permits the substitution of a statement based upon appellant's best recollection in the event that no record of a proceeding was made or a transcript is unavailable, see Brattrud v. Town of Exline, 628 F.2d 1098 (8th Cir. 1980), appellant's failure in this instance to provide a transcript or suitable substitute of the settlement proceedings in the District Court would not be an appropriate ground upon which to dismiss her appeal. If an evidentiary hearing had been held, and she had not provided a transcript of that hearing, rule 10 would clearly apply. The district court docket sheet is silent and the parties do not allude to any such hearing. A transcript of the settlement proceeding itself would not necessarily negate her claim, since the claim requires an inquiry primarily into her state of mind and secondarily into the state of mind of the other participants, particularly those serving as translators, and the content of the statements that they made to her in Chinese.
 
 
 11
 Therefore, the District Court's order enforcing the settlement agreement is vacated[4] and this case remanded for further proceedings.
 
 
 
 *
 Honorable Ralph B. Guy, Jr., United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 It is unclear whether that case was filed before or after she initiated her federal case. The parties and the District Court have alluded to an interlocutory decision of the state court that it has jurisdiction in rem only. There is nothing in the record before this Court to indicate whether the res over which the court purported to assert jurisdiction was the alleged marriage or some property of Wing, who is a resident of Ohio
 
 
 [2]
 Appellant contends on the basis of the court's June 15 order that because a written stipulation was never agreed to and filed, the settlement agreement was never consummated. There is no merit to this argument. '[T]he power of a trial court to enforce a settlement agreement has been upheld even where the agreement has not been arrived at in the presence of the court nor reduced to writing.' Kukla v. National Distillers Products Co., 483 F.2d 619, 621 (6th Cir. 1973) (citations omitted). Nor does the order establish filing of a stipulation within 120 days as a condition precedent to a binding settlement. The first paragraph of the order clearly states that 'the parties settled this matter during negotiations . . .'
 
 
 [3]
 She apparently does not dispute that she was willing to settle her federal claims, and her federal complaint clearly requested future as well as back support. It did not, however, request a division of marital property. Thus, if the Illinois court's assertion of jurisdiction in rem was based upon the presence of some property of Wing's in the state, it is not inconsistent as a matter of logic that she may have been willing to settle her federal claims without compromising her case in state court
 
 
 [4]
 Another term of the settlement as entered is also disputed by appellant. That term provides that upon delivery by appellant of the divorce judgment to the court, that the settlement fund be paid over to her attorney for disbursement. She objected to this term, not on the basis that she did not understand it to be part of the original settlement agreement, but because a fee dispute had arisen between herself and counsel that warranted a different mode of disbursement to protect her interests. Since we vacate the District Court order and remand for further proceedings, it is unnecessary to address this issue, since the District Court will have the opportunity to hear further arguments from the parties regarding this aspect of the settlement. We note, however, that commonly accepted practice is for a check in payment of judgment to be made payable to the judgment-creditor-client and attorney, rather than the attorney alone. Hafter v. Farkas, 498 F.2d 587 (2d Cir. 1974)