Donald WILLIS, et al., Plaintiffs,

v.

**NEW WORLD VAN LINES, INC., et al., Defendants.**

No. 99–CV–76323.

United States District Court, E.D. Michigan, Southern Division.

Nov. 2, 2000.

---

Kurt B. Vander Voort, Ann Arbor, MI, for Plaintiffs.

Phillip L. Sternberg, Bruce J. Lazar, Couzens, Lansky, Farmington, Hills, MI, James E. Stewart, J. Michael Huget, John C. Blattner, Butzel Long, Ann Arbor, MI, for Defendants.

*OPINION AND ORDER DISMISSING DEFENDANT NEW WORLD VAN LINES; DISMISSING PLAINTIFFS' CLAIM OF CLAIM AND DELIVERY; GRANTING IN PART AND DENYING IN PART DEFENDANTS SONY'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT; DENYING PLAINTIFFS' MOTION TO COMPEL DISCOVERY, AND; AMENDING SCHEDULING ORDER*

STEEH, District Judge.

Defendants Sony Interactive Entertainment, Inc., Sony Music Entertainment, Inc, Sony Electronic Publishing Co., Sony Music Distribution, and Sony Computer Entertainment America, Inc. (collectively referred to as "Sony") move for partial summary judgment as to plaintiffs Donald Willis' and Teresita Willis' claims of emotional distress damages, third-party beneficiary breach of contract, statutory conversion under M.C.L. § 600.2919a, promissory estoppel, bad faith/silent fraud, tortious interference with contract, and exemplary damages. Plaintiffs move for leave to file a Second Amended Complaint to add claims of common law conversion, negligence, trespass to chattel, breach of fiduciary duty, and civil conspiracy. Plaintiffs also move to compel: (1) the deposing of Sony's Veronica Gargone, Larry Rubin, Andrew Zaffron, and Sony's Custodian of Records; (2) supplemental responses to plaintiffs' First Request for Admissions, First Request for Production of Documents, and First Set of Interrogatories, and; (3) responses to plaintiffs' Second Set of Discovery Requests. Plaintiffs further move to amend the current scheduling order. For the

reasons set forth below, Sony's motion for partial summary judgment will be GRANTED, IN PART, and DENIED, IN PART. Plaintiffs' motion for leave to file an amended complaint will be DENIED. Plaintiffs' motion to compel discovery will be DENIED. Plaintiffs' motion to amend the scheduling order will be GRANTED, IN PART, to provide new dates for filing the Final Pretrial Order, the Final Pretrial Conference, and trial.

## I. BACKGROUND

Plaintiffs Donald and Teresita Willis filed a First Amended Complaint on June 15, 1999 alleging Donald Willis and one or more of the Sony defendants agreed on February 2, 1995 that Willis would become employed by Sony. Specifically, Donald Willis was hired as the Vice President for Software Services of Sony Interactive Entertainment, Inc. ("SIE"), formerly known as Sony Electronic Publishing. Plaintiffs allege Sony agreed to pay their moving expenses incurred as a result of relocating from Virginia to Ann Arbor, Michigan. This agreement is referred to as the "Sony/Willis Contract". Plaintiffs allege Sony in turn contracted with defendant New World Van Lines, Inc. to provide the plaintiffs with moving and storage services. This agreement is referred to as the "Sony/New World Contract". Plaintiffs allege New World agreed to properly pack, transport, store and deliver their personal property, accepting a consignment of their goods on August 28, 1995. Plaintiffs allege they are third-party beneficiaries to the Sony/New World Contract.

Plaintiffs continue by alleging that, on January 31, 1996, Sony terminated Donald Willis' employment, prompting Willis and others to file a wrongful discharge lawsuit against SIE and Sony Music Entertainment, Inc. ("SME")[1]. Plaintiffs allege Sony responded by refusing to pay New World, thereby breaching the February 2, 1995 Sony/Willis Contract to the extent Sony agreed to pay all moving expenses. Plaintiff Donald Willis' wife Teresita Willis alleges she is a third-party beneficiary to the Sony/Willis Contract.

Count I of the First Amended Complaint alleges breach of the February 2, 1995 Sony/Willis Contract, and replevin as against Sony. Count II alleges breach of the alleged August 28, 1995 Sony/New World contract, and replevin against New World Van Lines. Count III seeks treble damages for conversion under M.C.L. § 600.2919a for the defendants' refusal to return the plaintiffs' personal property. Count IV alleges claim and delivery under M.C.L. § 600.2920. Count V alleges intentional infliction of emotional distress against Sony. Count VI alleges promissory estoppel. Count VII alleges bad faith/silent fraud against Sony for statements and omissions made by Sony's Bob Hurley regarding the payment of the plaintiffs' moving expenses. Count VIII alleges Sony tortiously interfered with the Sony/New World contract. Count IX alleges Sony is liable for exemplary damages because Sony retaliated against Donald Willis for filing a wrongful discharge lawsuit.

Defendant New World filed a counterclaim against the plaintiffs on September 9, 1999 alleging Donald Willis was a consignee to the Sony/New World Contract under which New World transported the plaintiffs' goods from Vienna, Virginia to Ann Arbor, Michigan in August 1995. New World alleges the plaintiffs did not have an Ann Arbor residence capable of receiving all of their goods, however, so the plaintiffs directed New World to place the goods in storage. New World alleges it has stored the plaintiffs' property since August 28, 1995, and that the plaintiffs are liable under the Sony/New World Contract for $25,657.95 in storage charges plus charges that continue to accrue.

On July 5, 2000, the court entered a stipulated order of partial settlement

1. *Lau v. Sony Interactive Entertainment,* No. 96–CV–74535 (E.D.Mich.1996) (J. Hood). Plaintiff Donald Willis was one of three named plaintiffs.

wherein Sony agreed to pay the plaintiffs $43,805.30 for charges that accrued after February 15, 2000, in satisfaction of Sony's alleged duty to reimburse the plaintiffs for relocating, transporting, or moving their household goods. The parties also agreed that, upon Sony's tender of the $43,805.30 payment, plaintiffs would dismiss Count IV alleging claim and delivery. On that same date, July 5, 2000, the court entered a second stipulated order providing for the dismissal of New World and its counter-claims on conditions that Sony tender the $43,805.30 payment to the plaintiffs, and the plaintiffs pay New World $34,805.29.

On August 23, 2000, plaintiffs filed their motions for leave to file an amended com-plaint, to compel discovery, and to amend the current scheduling order. On August 28, 2000, the court held a scheduled hear-ing on Sony's motion for partial summary judgment. At the hearing, plaintiffs indi-cated a reservation about negotiating a $43,805.30 check tendered by Sony, argu-ing that acceptance of the check should not be construed as an admission or evidence of the corporate relationships among the various Sony defendants. Sony agreed that plaintiffs' acceptance of the check should not be used as evidence. With that understanding, plaintiffs agreed to accept the check. Following oral argument on Sony's motion for partial summary judg-ment, the court permitted Sony to file a supplemental affidavit attesting to the cor-porate relationships among the Sony de-fendants. Sony filed an affidavit and sup-plemental brief on September 1, 2000. On September 11, 2000, Sony filed its re-sponse to the plaintiffs' motions. Plaintiffs filed their reply brief on September 21, 2000. On October 4, 2000, the court re-ceived a letter from plaintiffs' counsel ad-vising that defendant New World should be dismissed from this lawsuit consistent with the Court's July 5, 2000 Orders.

2. *See* June 15, 1999 Complaint, ¶ 28, C, at 6.

3. Sony also moves for summary judgment of the plaintiffs' claim and delivery claim as

## II. STIPULATED DISMISSALS

Plaintiffs have demonstrated that the conditions of the July 5, 2000 stipulated orders have been satisfied. Accordingly, defendant New World, and New World's counterclaims, will be dismissed. Plain-tiffs claims of claim and delivery under M.C.L. § 600.2920 as alleged in Count IV will also be dismissed.

## III. SONY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Sony moves for partial summary judg-ment of the plaintiffs' claims for emotional distress damages allegedly arising from the breach of the Sony/Willis Contract as alleged in Count I [2], plaintiff Teresita Wil-lis' third-party beneficiary claim of breach of the Sony/Willis Contract as alleged in Count I, plaintiffs' statutory conversion claim under M.C.L. § 600.2919a as alleged in Count III, plaintiffs' intentional inflic-tion of emotional distress claim as alleged in Count V, plaintiffs' promissory estoppel claim as alleged in Count VI, plaintiffs' bad faith/silent fraud claim as alleged in Count VII, plaintiffs' tortious interference claim as alleged in Count VIII, and plaintiffs' claim for exemplary damages under Count IX.[3] Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depo-sitions, answers to interrogatories and ad-missions on file, together with the affida-vits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See FDIC v. Alexander,* 78 F.3d 1103, 1106 (6th Cir.1996). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfa-vored procedural shortcut. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Ku-*

alleged in Count IV. As stated in Section II, this claim is being dismissed pursuant to the June 5, 2000 stipulated orders.

*trom Corp. v. City of Center Line,* 979 F.2d 1171, 1174 (6th Cir.1992).

The standard for determining whether summary judgment is appropriate is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Winningham v. North Am. Resources Corp.,* 42 F.3d 981, 984 (6th Cir. 1994) (citing *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir.1989)). The evidence and all inferences drawn therefrom must be construed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Enertech Electrical, Inc. v. Mahoning County Commissioners,* 85 F.3d 257, 259 (6th Cir.1996); *Wilson v. Stroh Companies, Inc.,* 952 F.2d 942, 945 (6th Cir.1992).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 270, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *see also Adams v. Philip Morris, Inc.,* 67 F.3d 580, 583 (6th Cir.1995). Mere allegations or denials in the non-movant's pleadings will not meet this burden. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party cannot rest on its pleadings to avoid summary judgment, but must support its claim with some probative evidence. *Kraft v. United States,* 991 F.2d 292, 296 (6th Cir.), *cert. denied,* 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993).

### A. Record

Plaintiff Donald Willis was offered the position of Vice President for Software Services at defendant SIE, f/k/a Sony Electronic Publishing, Co., on February 2, 1995. Willis represents that he worked for SIE and the Sony Music ' Division ("SMD"), with SMD being a division of SME. Willis accepted the job offer on February 15, 1995.

Willis' new position at SIE required that he and his wife Teresita relocate from Vienna, Virginia to Ann Arbor, Michigan. According to Donald Willis, he first moved into a furnished Ann Arbor apartment in March 1995. Later, in August 1995, the plaintiffs' household goods were moved from Virginia to Michigan, with 98 percent of the goods being placed in storage because the plaintiffs were in the process of building a new house in Michigan. Donald Willis believed the household goods would need to be stored for a year until the house was completed. The plaintiffs chose to build a new house in Michigan because they had just finished building a new home in Virginia. With respect to the payment of moving and storage expenses, plaintiff Donald Willis has testified:

Q. Okay. Did you tell anyone at Sony that you expected to have to store your goods for a year when you moved to Ann Arbor?

A. (by Donald Willis) Uh-huh.

Q. Who did you tell?

A. Bob Hurley

Q. When?

A. Early on in the negotiations. He knew I was in a new house. I spoke to him specifically about having to store the household goods for an extended period of time while we built a new house. I told him right up front that we were not—that we wanted to replicate [our Virginia house]. We had only been in it for six months and his reply was no problem, we'll take care of whatever you need.

Q. Did you ever put that in writing to him?

A. Not in so many words but in several e-mails back and forth we discussed my need for a—my concern about relocation assistance and his reply to that concern.

Q. Now your talking about e-mails from what time period? Before you were hired at Sony or after?

A. Yeah, right about the time I was being hired. About the February time frame.

Q. In any of those e-mails, did you tell him you were going to be needing to store your goods for up to a year?

A. I don't recall that I did in any of the e-mails, no. But I certainly made it a point to tell him that that was a major concern of mine.

Q. What did he tell you?

A. He told me that I could store the goods as long as was necessary.

Q. But that's never in writing anywhere, correct?

A. Not that I am aware of, no.

Q. What else do you recall discussing with Mr. Hurley before you were hired with respect to relocation other than what you've already testified to?

A. Well, that they would pay the relocation costs of my house, the mortgage costs to get a new mortgage.

Q. And the points, that kind of thing?

A. And the points, that kind of stuff; that they would pay my travel expenses back and forth to D.C. for the six months or so before we sold the house, that they would pay all my living expenses in between the time that I moved there in March and the time I actually got my—moved out of the house in August.

Q. And did they pay those moving expenses and those travel expenses?

A. Yes.

Donald Willis April 18, 2000 Deposition Transcript, at 14–16. Donald Willis has further testified:

Q. Going back to the line of questions about your pre-employment discussions with Mr. Hurley, do you have any reason to believe that he was aware that Tessa was part of the move, that she had an ownership interest in the property that would be moved, et. cetera?

A. Oh, absolutely.

Q. And what is your basis for believing he knew that?

A. He knew I was married and I am almost sure that he had met Tessa prior to that.

*Id.* at 82. Plaintiffs proffer a "Basic Relocation Policy Summary" which states that "Actual shipping and storage costs" are covered expenses. Plaintiffs' Exhibit 14.

Plaintiff Teresita Willis has testified she talked to Sony's Veronica Gargone in July 1995 about her concerns with moving certain personal property including a Japanese painting, a grandfather clock, and an automobile. *See* Teresita Willis April 18, 2000 Deposition Transcript, at 32–33. New World Van Lines moved the plaintiffs' property on August 25, 1995, and delivered a majority of it to a warehouse for storage. A New World bill of lading and freight bill signed by a "warehouser" on August 28, 1995 lists "Sony Music Distribution" as consignor, and "Donald Willis" as consignee, with invoicing to be addressed to "Ms. Veronica Gargone, Sony Music Division, 550 Madison Ave., New York, New York, 10022." Plaintiff's Exhibit 5. The document is signed by one Donald Willis, Jr., who plaintiff Donald Willis attests is his son. Above the signature line, the freight bill reads:

RESIDENCE DELIVERY ACKNOWLEDGMENT & C.O.D. PAYMENT OPTION

1. THE ABOVE SERVICES WERE RENDERED AND THE PROPERTY DESCRIBED HAS BEEN RECEIVED IN GOOD CONDITION EXCEPT AS NOTED ON THE INVENTORY AND/OR THE ATTACHED PERFORMANCE REPORT.

2. I AGREE TO PAY ALL CHARGES IN ACCORDANCE WITH CARRIER'S TARIFF.

3. IF I HAVE NOT PAID ALL CHARGES IN ACCORDANCE WITH

CARRIER'S TARIFF AT THE TIME OF DELIVERY, I REQUEST THAT THE SHIPMENT BE RELEASED TO ME UPON PAYMENT OF THE ESTIMATED CHARGE $ ——————— PLUS 10% TOTALING $ —————— AND HEREBY AGREE TO PAY THE BALANCE OF ALL CHARGES TO CARRIER AT THE ABOVE ADDRESS WITHIN 30 DAYS, EXCLUDING SATURDAYS, SUNDAYS, HOLIDAYS.

Plaintiffs' Exhibit 5.

Not long after becoming employed at SIE, there were indications that Donald Willis' position might be eliminated. According to Willis, by December 9, 1995, he had paid between $12,000.00 and $15,000.00 toward the purchase of the Ann Arbor home. *See* Willis April 18, 2000 Deposition Transcript, at 20.

Q. Okay. Now, as of December '95, I think you knew that you were not going to be working for Sony much beyond the end of the year, is that correct?

A. Not really because the problem was they kept stringing us along. We never did get a—we never did get a termination letter.

Q. Okay. It's fair to say you were sending out your resume prior to December 9th, correct, to other prospective employers?

A. I was definitely looking around, yes.

Q. And it's fair to say in November and October, you had been told that MSS, Sony Media Software Services, was being disbanded?

A. We were told that they were being disbanded but we were never told that our function was going away because what we were doing was for the Play Station and there was a list of things that had to be accomplished and every time they would say, well, looks like we're going to close you guys down, no, there's something else we need to get done, so there was never a final time period.

Q. As of December '95, you were receiving severance proposals from Sony, weren't you? . . . .

A. That's correct.

*Id.* at 20–21. Plaintiff Donald Willis attests by way of affidavit that: "In late 1995 and early 1996 I was encouraged by Mr. Hurley and Mr. Glen Sblendorio to try to negotiate a resolution to my uncertain job status." Plaintiffs' Exhibit 9. Plaintiff Donald Willis' employment was terminated in December 1995, effective January 1, 1996.

An April 4, 1996 fax cover sheet sent to Sony's Ms. Gargone from New World indicates that storage charges from August 29, 1995 to December 31, 1995 for the plaintiffs' household goods remained unpaid by Sony. *See* Plaintiffs' Exhibit 9. Plaintiffs received a May 2, 1996 invoice from defendant New World seeking payment of approximately $1,924.00 for storage costs accruing from January 1, 1996 to January 23, 1996. Three months later on August 23, 1996, Donald Willis and two other former Sony employees filed a wrongful termination lawsuit in state court, which was removed to federal court on October 1, 1996 and assigned to Judge Hood. *See* footnote 1.

Plaintiffs thereafter received a November 22, 1996 letter from New World stating:

Pursuant to our telephone conversation of today, I confirmed with Ms. Veronica Gargone Associate Director, Traffic Administration of Sony that they would not assume any additional charges or cost of delivery out of storage to residence.

The estimated storage charges and delivery out of storage up to 1/23/97 is approximately $21,000.00.

If you need to contact Ms. Gargone her telephone number is 212/833–8000 her fax number is 212/833–5898.

I want to resolve this matter in the very near future.

Please contact me at 1–800–422–9300 if you have any questions.

Sincerely yours,
Shirley Marx
Chairman

Plaintiffs' Exhibit 12. Almost a year later, New World sent plaintiffs a September 8, 1997 letter which reads:

This letter serves as notification that unless we receive payment by return mail in the amount of $22,014.72 covering the storage charges for your household goods, an advertisement will be placed in the Chicago Tribune on September 24th and 25th stating that we are turning your goods over to auctioneers for a public auction.

Plaintiffs' Exhibit 10. Plaintiffs sent New World a September 14, 1997 check for $22,014.72. Plaintiffs' Exhibit 13. As of the August 28, 2000 hearing, plaintiffs were not yet in possession of their household goods.

### B. Choice of Law

"It is a well-accepted principle that a federal court in a diversity case must apply the conflict of law rules of the state in which it sits." *Banek Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 361 (6th Cir.1993) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) and *Colonial Refrigerated Transp., Inc. v. Worsham*, 705 F.2d 821, 825 (6th Cir.1983)). The parties rely upon Michigan law to support their positions, and agree Michigan law is controlling. There is no dispute that the claims are substantially related to plaintiff Donald Willis' employment in Michigan. Absent argument to the contrary, the court will apply Michigan law. *See generally Equitable Life Assurance Society of the United States v. Poe*, 143 F.3d 1013, 1016 (6th Cir.1998); *Chrysler Corporation v. Skyline Industrial Services, Inc.*, 448 Mich. 113, 120, 120 n. 14, 125, 528 N.W.2d 698 (1995).

### C. Analysis

#### i. Breach of Contract/Replevin Emotional Distress Damages

■ Sony argues the plaintiffs cannot recover emotional distress damages for breach of the Sony/Willis contract. As a general rule, emotional distress damages cannot be recovered for the breach of a commercial contract absent purposeful tortious conduct independent of the breach. *See Kewin v. Massachusetts Mutual Life Ins. Co.*, 409 Mich. 401, 420–421, 295 N.W.2d 50 (1980). Consequently, emotional distress damages are generally not recoverable for breach of an employment contract. *Valentine v. General American Credit, Inc.*, 420 Mich. 256, 263, 362 N.W.2d 628 (1984). Exceptions to the general rule have been recognized for the breach of more personal contracts such as the breach of a promise to marry, breach of a contract to deliver a child by caesarean section, and breach of an insurance contract where the insurer's refusal to pay a liability judgment resulted in the insured being jailed. *Id.* at 261, 362 N.W.2d 628 (citing, respectively, *Vanderpool v. Richardson*, 52 Mich. 336, 17 N.W. 936 (1883); *Stewart v. Rudner*, 349 Mich. 459, 84 N.W.2d 816 (1957), and; *Miholevich v. Mid–West Mutual Auto Ins. Co.*, 261 Mich. 495, 246 N.W. 202 (1933)).

Plaintiffs argue they are entitled to emotional distress damages caused by the breach of Sony's contractual obligation under the Sony/Willis Contract to pay all of the plaintiffs' moving and storage expenses because they, plaintiffs, have also alleged replevin in Count I. Plaintiffs further insist that Sony's failure to timely pay New World caused New World to wrongfully assert a lien against their personal property, including property of great sentimental value. Plaintiffs maintain this "incarceration" of their personal property warrants an award of emotional distress damages.

■ "The measure of damages in a replevin suit where there is no return of the property is the value at the time of the conversion, plus interest." *J.L. Hudson Co. v. Barnett*, 255 Mich. 465, 470, 238 N.W. 243 (1931). "In the absence of fraud

or malice, the law in replevin, as in other actions, simply aims at a just compensation in damages, the object being to restore the defendant, as far as possible, to the condition she was in before the act complained of was committed." *Theatre Equipment Acceptance Corp. v. Betman*, 266 Mich. 22, 25, 253 N.W. 201 (1934). The fact that plaintiffs have alleged replevin along with breach of contract in Count I does not support awarding emotional distress damages for breach of the Sony/Willis Contract. Plaintiffs' reliance on *Steel Motor Service, Inc. v. Zalke*, 212 F.2d 856 (6th Cir.1954) is misplaced. The *Zalke* court held that a successful statutory conversion claim under then M.C.L. § 627.24 entitled the *Zalke* plaintiff to recover lost profits for the unlawful taking and possession of a truck trailer. *Zalke* involved neither a common law breach of contract claim nor an award of emotional distress damages.

Plaintiffs also rely upon *Scott v. Hurd–Corrigan Moving & Storage Co., Inc.*, 103 Mich.App. 322, 302 N.W.2d 867 (1981). The *Scott* court reasoned:

> In deciding whether exemplary damages are awardable for breach of a commercial contract, we direct the trial judge's attention to *Kewin v. Massachusetts Mutual Life Ins. Co.*, 409 Mich. 401, 419, 295 N.W.2d 50 (1980), wherein Justice Kavanagh restates the general rule that, absent proof of conversion, exemplary damages are not recoverable for the breach of a commercial contract "the mere breach of which does not give rise to a right to recover damages for mental distress". Rather, the damages recoverable are those damages that arise naturally from the breach or which reasonably can be said to have been in contemplation of the parties at the time the contract was made. Absent proof of such contemplation, the damages recoverable do not include compensation for mental anguish.
> The instant case differs from *Kewin* in that in the plaintiff's amended complaint, conversion under M.C.L.

§ 440.7210(9); M.S.A. § 19.7210(9), was pleaded. However, in the absence of a finding of proof of a wilful breach, no award of exemplary damages or damages for mental anguish would be proper.

*Scott*, 103 Mich.App. at 348–349, 302 N.W.2d 867. Here, plaintiffs seek emotional distress damages in Count I alleging breach of the Sony/Willis Contract. Plaintiffs allege separate claims of statutory conversion and fraud in Counts III and VII. The *Scott* decision simply does not support a legal conclusion that proof of breach of contract or replevin merits recovery of emotional distress damages.

■ This court is not persuaded that being jailed as the result of a contractual breach equates to a *threatened sale* of one's personal property. In *Miholevich*, an insured was confined to a county jail for five days and deprived of his liberty interest as the result of his insurer's breach of contract. *See Miholevich*, 261 Mich. at 496, 246 N.W. 202. Here, plaintiffs have been temporarily deprived of the enjoyment of their personal property. While the plaintiff's temporary loss of a property right implicates a personal element, so do employment contracts. *See Kewin*, 409 Mich. at 420–421, 295 N.W.2d 50; *Valentine*, 420 Mich. at 261, 263, 362 N.W.2d 628. Yet, absent proof of independent tortious conduct, a former employee is not entitled to recover emotional distress damages for the breach of his employment contract. *Id.* For purposes of awarding emotional distress damages for the breach of a commercial contract, the court does not equate being jailed to being temporarily deprived of personal property.

■ The issue of whether plaintiffs are entitled to emotional distress damages for breach of a commercial contract and/or replevin is so one-sided that the defendants Sony are entitled to summary judgment. *Winningham*, 42 F.3d at 984. Plaintiffs' claim for emotion distress damages as contained in Count I alleging

breach of contract and replevin will be dismissed as a matter of law. *Id.*

### ii. Teresita Willis' Third–Party Beneficiary Breach of Sony/Willis Contract Claim

■ Sony argues Teresita Willis cannot establish that she is a third party beneficiary to her husband Donald Willis' Sony/Willis Contract as a matter of Michigan law.

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
>
> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.
>
> (2)(a) The rights of a person for whose benefit a promise has been made, as defined in (1), shall be deemed to have become vested, subject always to such express or implied conditions, limitations, or infirmities of the contract to which the rights of the promisee or the promise are subject, without any act or knowledge on his part, the moment the promise becomes legally binding on the promisor, unless there is some stipulation, agreement or understanding in the contract to the contrary.

M.C.L. § 600.1405(1), (2)(a). Consistent with this language, "only intended third-party beneficiaries, not incidental beneficiaries, may enforce a contract under § 1405." *Koenig v. City of South Haven,* 460 Mich. 667, 679, 597 N.W.2d 99 (1999). "Third-party beneficiary status requires an express promise to act to the benefit of the third party; where no such promise exists, that third party cannot maintain an action for breach of the contract." *Dynamic Construction Co. v. Barton Malow Co.,* 214 Mich.App. 425, 428, 543 N.W.2d 31 (1996).

■ Construing the pleadings and evidence in a light most favorable to the plaintiffs, it remains possible for Teresita Willis to prove at trial that she was an intended beneficiary of the alleged promise made under the Sony/Willis Contract to pay all moving and storage expenses associated with her husband Donald Willis' move from Virginia to Ann Arbor. Donald Willis has testified that Sony's Bob Hurley knew when he allegedly promised to pay storage expenses for as long as necessary that Teresita Willis, as Donald Willis' wife, had an ownership interest in the Virginia marital property that was being transported to Ann Arbor, Michigan. There is also evidence indicating Sony's Veronica Gargone conversed directly with Teresita Willis about the details of moving items especially valued by Teresita. Under the totality of the circumstances, reasonable jurors could construe Hurley's alleged promise as an express promise made intentionally and directly for the benefit of Teresita Willis. *Koenig,* 460 Mich. at 679, 597 N.W.2d 99; M.C.L. § 600.1405(1). To enjoy third-party beneficiary status, Teresita Willis was not required to know of Hurley's alleged promise when it was made. *See* M.C.L. § 600.1405(2).(a). Accordingly, defendants are not entitled to summary judgment of plaintiff Teresita Willis' breach of contract claim premised on her alleged status as a third-party beneficiary. *Winningham,* 42 F.3d at 984.

### iii. Statutory Conversion under M.C.L. § 600.2919a

■ Sony argues the plaintiffs cannot recover for statutory conversion under M.C.L. § 600.2919a because the plaintiffs' personal property is known to be stored in a Chicago, Illinois warehouse, and therefore Sony cannot be found to be aiding anyone in the concealment of the plaintiffs' property. Plaintiffs counter they have yet to be informed of the location of the Chicago warehouse. Plaintiffs assert Sony's refusal to pay New World's shipping and storage charges has caused the wrongful concealment of their household goods.

A person damaged as a result of another person's buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property when the person buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney's fees. This remedy shall be in addition to any other right or remedy the person may have at law or otherwise.

M.C.L. § 600.2919a. Converted property is property over which any distinct act of dominion has been wrongfully exerted over another person's property. *See Head v. Phillips Camper Sales & Rental, Inc.*, 234 Mich.App. 94, 111, 593 N.W.2d 595 (1999); *Pamar Enterprises, Inc. v. Huntington Banks of Michigan*, 228 Mich.App. 727, 733, 580 N.W.2d 11 (1998). A conversion may be partial, as where the owner's property is returned after being wrongfully retained for a period of time under claim of lien where there was no lien. *Even–Heat Co. v. Wade Electric Products Co.*, 336 Mich. 564, 572, 58 N.W.2d 923 (1953). To be held liable under M.C.L. § 600.2919a, the defendant must have known that the property at issue was stolen, embezzled, or converted. *See Hovanesian v. Nam*, 213 Mich.App. 231, 237, 539 N.W.2d 557 (1995).

■ Construing the pleadings and evidence in a light most favorable to the plaintiffs, plaintiffs cannot possibly prove that Sony, by failing to pay New World, is aiding New World in concealing converted property. Assuming that the plaintiffs' household goods and furnishings are "concealed" in an unknown Chicago warehouse, plaintiffs have not come forward with evidence or authority to support a finding that New World is wrongfully exerting dominion over the property, to wit, over converted property. According to Donald Willis, his son Donald Willis, Jr., not Sony, signed the August 1995 New World bill of lading authorizing New World to place the goods in storage. Plaintiffs' argument that Sony wrongfully permitted New World to retain a security interest in the property is based solely on the fact that Sony contracted with New World. Plaintiffs have not explained why it is wrongful for a moving company like New World Van Lines to retain a security interest in the goods they move. Nor have plaintiffs proffered evidence that such a practice is commercially unreasonable. While the court agrees with plaintiffs that, consistent with *Even–Heat Co.*, 336 Mich. at 572, 58 N.W.2d 923, a partial conversion may be accomplished where property is wrongfully retained under a claim of lien where no lawful lien exists, plaintiffs have not met their burden of reasonably disputing that New World enjoys a lawful lien against the plaintiffs' goods until New World's charges are paid in full. *See Anderson*, 477 U.S. at 247–248, 106 S.Ct. 2505; *Kraft*, 991 F.2d at 296. Sony is entitled to summary judgment of the plaintiffs' statutory conversion claim as a matter of law. *Winningham*, 42 F.3d at 984.

### iv. Intentional Infliction of Emotional Distress

■ Sony argues the record does not support a finding of actionable intentional infliction of emotional distress. To prevail on a claim of intentional infliction of emotional distress in Michigan, the plaintiff must prove the defendant, through extreme and outrageous conduct, intentionally or recklessly inflicted severe emotional distress on the plaintiff. *See Mroz v. Lee*, 5 F.3d 1016, 1019 (6th Cir. 1993) (citing Restatement (Second) Of Torts § 46 (1965) and *Ledsinger v. Burmeister*, 114 Mich.App. 12, 318 N.W.2d 558, 561 (1982)). Insults, indignities, threats, or annoyances are normally insufficient to sustain a claim of intentional infliction of emotional distress, but they must be viewed in the context of the surrounding circumstances. *See Ledsinger*, 114 Mich.App. at 19, 318 N.W.2d 558. Even a wilful or bad faith failure to pay a

contractual obligation does not of itself constitute the extreme and outrageous conduct requisite to an intentional infliction of emotional distress claim. *See Taylor v. Blue Cross/Blue Shield of Michigan,* 205 Mich.App. 644, 657, 517 N.W.2d 864 (1994).

Plaintiffs argue Sony acted in bad faith by refusing to pay New World, causing New World to assert a lien over their property and dun the plaintiffs. Plaintiffs maintain Sony's purpose was to "brow beat" Donald Willis into settling his wrongful discharge claims. Plaintiffs add that Sony's conduct adversely affected Teresita Willis, who was not a party to the wrongful discharge lawsuit. Plaintiffs rely upon *Margita v. Diamond Mortgage Corp.,* 159 Mich.App. 181, 406 N.W.2d 268 (1987) and *Rosenberg v. Rosenberg Brothers Special Account,* 134 Mich.App. 342, 351 N.W.2d 563 (1984) to support their position.

In *Margita,* the Michigan Court of Appeals held that a two year continuous campaign of phone and letter harassment attempting to coerce a husband and wife into making mortgage payments beyond what they owed, accompanied by additional baseless threats of foreclosure, could in fact constitute the extreme and outrageous conduct necessary to sustain a claim of intentional infliction of emotional distress. It was undisputed that the mortgagors had, at all times, made timely mortgage payments. The repeating caller, acting on behalf of the entity that had arranged the home loan, called the borrowers names such as "ignorant" and "stupid", and used numerous profane words. Notwithstanding that the *Margita* defendant's own financial records indicated the mortgage payments were up-to-date, the mortgagors continued to receive threats of foreclosure, including a threatening letter from an attorney sent six months after the *Margita* case was filed. Stressing that the allegedly offending conduct must be viewed in context, the *Margita* court reasoned:

In the instant case, defendants' business involves lending money for mortgages. It appears undisputed that the debt defendants attempted to collect was not and has never been overdue. Despite this, defendants or their agents repeatedly harassed plaintiffs through abusive phone calls or letters assessing late charges. Foreclosure was apparently threatened on several occasions. Defendants obviously have a great deal of power to affect plaintiffs' credit rating and future borrowing ability. We believe defendants could have done nothing more outrageous in attempting to collect this imagined overdue debt, short of actually instituting foreclosure proceedings. It would be one thing if defendants were proceeding on a debt they had a right to collect. Even a few letters or phone calls to collect the not-yet-due debt might be viewed as a petty or trivial annoyance. Continuous unnecessary harassment over a nearly two-year period by a company whose main business is servicing such mortgages, however, might easily be viewed as extreme and outrageous conduct under the circumstances.

*Margita,* 159 Mich.App. at 190, 406 N.W.2d 268.

The *Rosenberg* case involved the widow of a recently deceased businessman who had been involved in numerous business relationships with his brothers as well as others. The widow attempted without success to negotiate settlements on behalf of herself and the estate. The *Rosenberg* court began its analysis by holding that the allegedly unlawful conduct must be viewed in the context of the circumstances, and that a claim for intentional infliction of emotional distress is not actionable if "the actor does no more than insist upon his own legal rights." *Rosenberg,* 134 Mich. App. at 352, 351 N.W.2d 563 (citing *Ledsinger,* 114 Mich.App. at 19, 318 N.W.2d 558). The *Rosenberg* court determined that a question of fact remained whether one of the decedent's brothers could be

held liable for intentional infliction of emotional distress:

> Plaintiff's complaint ... describes more than 26 instances where defendant Edward Rosenberg exerted his position over the recently widowed Charlotte Rosenberg to browbeat her into submission [during negotiations]. Edward Rosenberg was not only the brother of Charlotte Rosenberg's deceased husband, he also had complete control of the records, books and business affairs in which Jack Rosenberg played a part. Additionally, plaintiff was dependent upon defendant for information relating to decedent's estate, and for her own income. If plaintiff is able to demonstrate the allegations made in her complaint, the question of whether the allegations are sufficiently outrageous to constitute the tort of intentional infliction of emotional distress should be left to the trier of fact.

*Id.*

 Construing the pleadings and evidence in a light most favorable to the plaintiffs, reasonable persons could not disagree under the context of the circumstances presented here that Sony's conduct in this matter could not be construed as extreme and outrageous. Sony contracted with New World in August 1995 to move the plaintiffs' household goods from Vienna, Virginia to Ann Arbor, Michigan, and New World was directed to store a majority of the goods in a Chicago warehouse because the plaintiffs' Ann Arbor home was not yet built. Sony has since refused to pay New World for all of the storage costs that have accrued since August 29, 1995, causing the plaintiffs goods to remain in storage until New World's bill is fully paid. Even assuming Sony has wilfully and in bad faith refused to pay the New World storage bill, as the plaintiffs argue, such is insufficient to establish extreme and outrageous conduct in that New World has retained the goods based on its legal right to be paid; plaintiffs do not dispute New World's right to compensa-

tion for transporting and storing the household goods. *Ledsinger,* 114 Mich. App. at 19, 318 N.W.2d 558; *Taylor,* 205 Mich.App. at 657, 517 N.W.2d 864. Unlike the situation in *Margita,* Sony has not harassed the plaintiffs with insulting and threatening phone calls and letters requesting payment. Indeed, it is New World that has demanded payment from the plaintiffs. In the case at bar, it is undisputed that the entity demanding payment from the plaintiffs, New World, is in fact owed the money; plaintiffs sent New World a check for $22,014.72 before the September 24, 1997 deadline. *See Margita,* 159 Mich.App. at 190, 406 N.W.2d 268 (stating "It would be one thing if defendants were proceeding on a debt they had a right to collect"). Even a bad faith refusal to pay a contractual debt does not amount to extreme and outrageous conduct. *Taylor,* 205 Mich.App. at 657, 517 N.W.2d 864.

*Rosenberg* is also distinguishable. Plaintiffs argue Sony acted in an extreme and outrageous manner by attempting to settle the wrongful discharge lawsuit by agreeing *inter alia* to pay all of New World's charges. "It is a well established principle that the law, and public policy, favor the settlement of disputes without litigation." *Echols v. Nimmo,* 586 F.Supp. 467, 468 (W.D.Mich.1984). Within the context of two pending lawsuits, it is reasonable to expect that Sony would attempt to settle both lawsuits, even to the extent settlement of Donald Willis' employment dispute could affect the rights of Teresita Willis. Plaintiffs' characterization of "browbeating" is unsupported by the record. Unlike the defendant in *Rosenberg,* Sony does not have complete control over the plaintiffs' records and business affairs. *See Rosenberg,* 134 Mich.App. at 352, 351 N.W.2d 563. *Rosenberg* does not stand for the proposition that attempting to negotiate a settlement of all outstanding issues equates to extreme and outrageous conduct. The Sony defendants are entitled to summary judgment of the plaintiffs' inten-

tional infliction of emotional distress claims as a matter of law. *Winningham,* 42 F.3d at 984.

#### v. Promissory Estoppel

■ In Michigan:

The elements of . . . promissory estoppel are (1) a promise; (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee; (3) which in fact produced reliance or forbearance of that nature; and (4) in circumstances such that the promise must be enforced if injustice is to be avoided. The sine qua non of promissory estoppel is a promise that is definite and clear.

*Marrero v. McDonnell Douglas Capital Corp.,* 200 Mich.App. 438, 442, 505 N.W.2d 275 (1993). *See also State Bank of Standish v. Curry,* 442 Mich. 76, 84–85, 500 N.W.2d 104 (1993). The doctrine of promissory estoppel is to be cautiously applied. *Marrero,* 200 Mich.App. at 443, 505 N.W.2d 275. If the performance satisfying the detrimental reliance requirement is the same performance which constitutes the consideration of a written commercial contract, the doctrine of promissory estoppel is not applicable. *See General Aviation, Inc. v. Cessna Aircraft Co.,* 915 F.2d 1038, 1042 (6th Cir.1990).

The plaintiffs' promissory estoppel claim alleges that Sony employees and agents "made statements indicating that packing, shipping, storage and delivery of Plaintiffs' household goods would be done at the sole expense of the SONY Defendants." First Amended Complaint, ¶ 52. Plaintiffs argue that this promise was made to both Donald Willis and Teresita Willis after Donald Willis became employed at SIE.

■ Plaintiffs have failed to come forward with evidence of a definite and clear promise made by anyone from Sony to Teresita Willis that packing, shipping, storage and delivery charges would be paid solely by Sony. *See* Teresita Willis April 18, 2000 Deposition Transcript, at 31–39 (describing her conversations with Veronica Gargone); Teresita Willis' August 3, 2000 Affidavit, attached as Plaintiffs' Exhibit 7. Absent evidence of a definite and clear promise made to Teresita Willis, Sony is entitled to summary judgment of Teresita Willis' promissory estoppel claim as a matter of law. *Winningham,* 42 F.3d at 984.

■ Donald Willis has testified Sony's Bob Hurley told him in the context of Sony's willingness to pay his moving expenses that he, Willis, "could store the goods as long as was necessary", but that this promise was never placed in writing. Donald Willis April 18, 2000 Deposition Transcript, at 14–15. Construing this evidence in a light most favorable to the plaintiffs, this alleged promise could reasonably be construed as a definite and clear promise that packing, shipping, storage and delivery charges would be paid solely by Sony. The holding in *General Aviation* is inapplicable because the performance that Sony alone pay all storage expenses is not the same performance that constitutes consideration under an integrated written contract; plaintiff concedes there is no such written contract. *See General Aviation,* 915 F.2d at 1042 (finding that a written integrated contract "by its own terms, [is] a full and complete expression of the parties' intentions", and therefore a claim of promissory estoppel is precluded). Accordingly, Sony is not entitled to summary judgment of plaintiff Donald Willis' promissory estoppel claim. *Winningham,* 42 F.3d at 984.

#### vi. Bad Faith/Silent Fraud

■ Fraudulent misrepresentation requires proof of: (1) a material representation made by the defendant; (2) that was false; (3) that when the representation was made, the defendant knew it was false or made it recklessly without any knowledge of its truth as a positive assertion; (4) with the intent that it should be acted upon by the plaintiff; (5) the plaintiff acted in justifiable reliance upon it, and; (6) the

plaintiff suffered damages. *See Temborius v. Slatkin,* 157 Mich.App. 587, 596–597, 403 N.W.2d 821 (1986). "The false material representation needed to establish fraud may be satisfied by the failure to divulge a fact or facts the defendant has a duty to disclose." *Clement–Rowe v. Michigan Health Care Corp.,* 212 Mich.App. 503, 507–508, 538 N.W.2d 20 (1995). Generally, an actionable claim of fraud must be predicated upon the misrepresentation of a past or existing fact, and not upon a promise to be performed in the future. *See Kasuri v. St. Elizabeth Hospital Medical Center,* 897 F.2d 845, 852 (6th Cir.1990) (citing *Hi–Way Motor Company v. International Harvester Co.,* 398 Mich. 330, 336, 247 N.W.2d 813 (1976)). An exception exists where the defendant makes a future promise without present intent to perform that induces the plaintiff to enter the contract. *See Dunn Appraisal Co. v. Honeywell Information Systems, Inc.,* 687 F.2d 877, 883 (6th Cir.1982) (citing *Hi–Way Motor Company,* 398 Mich. at 337, 247 N.W.2d 813; *Van Marter v. American Fidelity Fire Ins. Co.,* 114 Mich.App. 171, 184, 318 N.W.2d 679 (1982)).

■ Construing the pleadings and evidence in a light most favorable to the plaintiffs, plaintiffs have failed to come forward with evidence to support a finding that Sony, through Bob Hurley, did not intend to allow the plaintiffs "to store the goods as long as was necessary" at the time the statement was allegedly made by Hurley. Hurley's admission in a November 3, 1995 e-mail transmission that he "was advised to be ambiguous about relocation reimbursement" does not raise a legitimate inference that Sony didn't intend to store the Willis' goods for as long as necessary when Willis was hired; Donald Willis' long-term employment prospects with Sony changed well after he was hired in February 1997. Donald Willis' November 29, 1995 e-mail to Hurley, and the handwritten notes on the e-mail purportedly made by Hurley, add nothing to the issue of whether Sony intended in Feb-

ruary 1995 to perform its alleged promise to pay all of the Willis' moving and storage expenses. Plaintiffs' argument that Sony failed to reveal it would grant New World a security interest in the plaintiffs' property is not well taken in that plaintiffs' could not justifiably rely upon a contrary belief that New World, or any other moving company, would not require that it be granted a security interest in the goods being moved. *Temborius,* 157 Mich.App. at 596–597, 403 N.W.2d 821 (requiring a showing of justifiable reliance). Sony is entitled to summary judgement of the plaintiffs' claims of bad faith/silent fraud as a matter of law. *Winningham,* 42 F.3d at 984.

#### vii. Tortious Interference

■ Plaintiffs allege that one or more of the Sony defendants—Sony Interactive Entertainment, Inc., Sony Music Entertainment, Inc, Sony Electronic Publishing Co., Sony Music Distribution, and Sony Computer Entertainment America, Inc.—wrongfully instigated the breach of the Sony/Willis Contract and the Sony/New World Contract, but were not parties to those contracts and, therefore, they may be held liable for tortious interference with contractual relations. In Michigan, tortious interference with contract requires proof that a contract was breached at the instigation of the defendant without justification, and that the defendant was a "third-party" to the contractual relationship. *See Cook v. Little Caesar Enterprises, Inc.,* 972 F.Supp. 400, 414–415 (E.D.Mich.1997). Stated differently, a party cannot tortiously interfere with its own contract.

In a September 1, 2000 supplemental affidavit filed by Sony by leave of court, Steven Kober, Senior Vice President and Controller of Sony Corporation of America, attests:

The Sony Defendants are all affiliated corporations that all share a common corporate parent, Sony Corporation. [Sony Corporation of America] is the United States parent of the Sony De-

fendants, except for [Sony Computer Entertainment America, Inc.], which is directly owned by Sony Computer Entertainment, Inc., which is in turn owned by Sony Corporation.

Kober Affidavit, August 31, 2000, ¶ 3, at 2. Plaintiffs have not disputed this attestation.

■ "[A] corporate agent is not liable for tortious interference with the corporation's contract unless the agent acted purely for personal gain and with no benefit to the corporation." *Murphy v. Birchtree Dental, P.C.*, 964 F.Supp. 245, 250 (E.D.Mich.1997) (citing *Reed v. Michigan Metro Girl Scout Council*, 201 Mich.App. 10, 13, 506 N.W.2d 231 (1993)). *See also Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals*, 862 F.2d 597, 601, (6th Cir. 1988) (finding under Ohio law that parent company is privileged to interfere with its subsidiary's contracts because they are, in effect, the same entity). Here, all of the Sony defendants are affiliated with each other, have a common corporate parent, and share common economic interests. Nothing in the record supports a finding that the Sony defendants were in competition with respect to this matter, acting in their own benefit to the detriment of other Sony entities. In that plaintiff cannot show that any of the Sony defendants are "third-parties" to the Sony/Willis Contract or Sony/New World Contract, plaintiffs cannot prevail on their tortious interference with contract claim as a matter of law. *Cook*, 972 F.Supp. at 414–415; *Murphy*, 964 F.Supp. at 250. Sony is entitled to summary judgment of the plaintiffs' tortious interference with contractual relations claims. *Winningham*, 42 F.3d at 984.

#### viii. Exemplary Damages

Plaintiffs allege they are entitled to exemplary damages for Sony's refusal to perform the Sony/Willis Contract and Sony/New World Contract, and for refusing to pay the plaintiffs' costs and fees incurred in this case unless the plaintiffs agreed to bar any reference to the wrongful discharge case. *See* First Amended Complaint, ¶ 69. Plaintiffs allege Sony acted intentionally, maliciously and in bad faith, or with gross disregard for the high probability that such conduct would cause the plaintiffs to experience emotional distress, humiliation, and other non-monetary damages.

■ Plaintiffs have not proffered authority to support their position that they are entitled to exemplary damages for Sony's refusal to settle this lawsuit.

Damages for mental distress are not recoverable in a breach of contract action absent allegation and proof of tortious conduct existing independently of the breach of contract. *Kewin v. Massachusetts Mutual Life Ins. Co.*, 409 Mich. 401, 419–421, 295 N.W.2d 50 (1980); *Taylor v. Blue Cross & Blue Shield of Michigan*, 205 Mich.App. 644, 657, 517 N.W.2d 864 (1994); *Wendt v. Auto Owners Ins. Co.*, 156 Mich.App. 19, 24, 401 N.W.2d 375 (1986). In this case, as in *Kewin, Taylor,* and *Wendt,* plaintiff has pleaded no more than defendant's bad-faith failure to pay its contractual obligation. This is insufficient to establish an independent tort action. *Roberts v. Auto–Owners Ins. Co.*, 422 Mich. 594, 607–608, 374 N.W.2d 905 (1985); *Taylor, supra.*

*Isagholian v. Transamerica Ins. Corp.*, 208 Mich.App. 9, 17, 527 N.W.2d 13 (1994). Plaintiffs' alleged tort claims have been found to be meritless. Plaintiffs' replevin claim does not warrant a award of exemplary damages. *See J.L. Hudson Co.*, 255 Mich. at 470, 238 N.W. 243; *Betman*, 266 Mich. at 25, 253 N.W. 201. *See also Scott*, 103 Mich.App. at 348–349, 302 N.W.2d 867. Accordingly, Sony is entitled to summary judgment of the plaintiffs' claim for exemplary damages as a matter of law. *Winningham*, 42 F.3d at 984.

### IV. PLAINTIFFS' MOTIONS TO AMEND COMPLAINT, COMPEL DISCOVERY, AND AMEND SCHEDULING ORDER

The plaintiffs' recent August 23, 2000 motions to amend their First Amended

Complaint, compel discovery, and amend the February 22, 2000 Stipulated Scheduling Order were filed five days before the scheduled August 28, 2000 hearing on Sony's motion for partial summary judgment and, thus, Sony was unable respond to the motions before the hearing. Sony has since filed their response. The facts and legal arguments presented in the parties' briefs are sufficient to adjudicate plaintiffs' motions. Oral argument would not significantly aid the decisional process. Pursuant to E.D. Mich. Local R. 7.1(e)(2), it is ORDERED that the motions be resolved without oral argument.

### A. Motion to Amend Complaint

■ Plaintiffs move to add additional claims of common law conversion, negligence, trespass to chattel, breach of fiduciary duty, and civil conspiracy.[4] Leave to amend a complaint is to be freely granted when justice so requires. *See* Fed. R.Civ.P. 15(a). Absent bad faith or dilatory motive on the part of the movant, leave to amend should be granted unless it would not survive a motion to dismiss. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1041–42 (6th Cir.1991); *Head v. Jellico Housing Authority*, 870 F.2d 1117, 1124 (6th Cir.1989). In deciding a motion to dismiss, the court accepts the allegations as true, and may dismiss if the plaintiff can prove no set of facts which would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A complaint must contain either direct or inferential factual allegations respecting all of the elements of a claim. *See DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993).

#### i. Conversion

■ Plaintiffs allege Sony is liable in conversion for failing to honor their obligations under the Sony/New World Contract, causing New World to retain the plaintiffs' property, and refusing to return the property as requested in a March 9, 1999 letter. As explained in Section III, C, iii, *supra*, however, plaintiffs do not dispute that New World is still owed money under the Sony/New World Contract. Plaintiffs do not proffer authority to support a claim that New World's lien is unlawful. Accordingly, plaintiffs' proposed common law conversion claim would not survive a motion for dismissal. *See Head*, 234 Mich.App. at 111, 593 N.W.2d 595; *Pamar Enterprises*, 228 Mich.App. at 733, 580 N.W.2d 11. Plaintiffs' motion for leave to add a common law conversion claim should be denied. *Foman*, 371 U.S. at 182, 83 S.Ct. 227; *Sinay*, 948 F.2d at 1041–42; *Head*, 870 F.2d at 1124.

#### ii. Negligence

Plaintiffs allege in their proposed Second Amended Complaint that Sony breached a general duty not to interfere with their possessory interests, and a specific duty to protect the plaintiffs from harm from New World Van Lines, which were breached when Sony refused to pay New World, permitted New World to assert a lien, allowed New World to demand payment from the plaintiffs, permitted individuals associated with Sony to use the non-payment of New World as settlement leverage, and failed to properly supervise and/or inform individuals at Sony that the plaintiffs were married, had separate property interests in the household goods, and that plaintiff Teresita Willis was an innocent party to the wrongful discharge dispute between Donald Willis and Sony.

---

4. Plaintiffs' proposed Second Amended Complaint substitutes common law conversion for the present statutory conversion claim alleged in Count III (although plaintiff cites M.C.L. § 600.2919a in paragraph 39 of the proposed Second Amended Complaint), moves plaintiffs' present Count IX claim for exemplary damages to Count XIII, and alleges negligence in Count IX, trespass to chattels in Count X, breach of fiduciary duty in Count XI, and civil conspiracy in Count XII. *See* E.D.Mich.L.R. 15.1 (requiring that the proposed amended be attached to a motion to amend).

■ "[I]n a contractual setting, a tort action must rest on a breach of duty distinct from contract." *Roberts v. Auto–Owners Ins. Co.*, 422 Mich. 594, 603, 374 N.W.2d 905 (1985). The gravamen of an action is determined by reading the claim as a whole, examining the essential facts or grievance as alleged. *See Aldred v. O'Hara–Bruce*, 184 Mich.App. 488, 490, 458 N.W.2d 671 (1990); *Sankar v. Detroit Bd. of Education*, 160 Mich.App. 470, 476, 409 N.W.2d 213 (1987). The gravamen of the plaintiffs' proposed negligence claim is that Sony failed to pay New World under the Sony/New World Contract, a duty which allegedly arose under the Sony/New World Contract and Sony/Willis Contract. Michigan does not recognize an independent tort claim for breach of an implied covenant of good faith and fair dealing. *Ulrich v. Federal Land Bank of St. Paul*, 192 Mich.App. 194, 197, 480 N.W.2d 910 (1991) (citing *Kewin*, 409 Mich. at 422–423, 295 N.W.2d 50). To the extent Sony allegedly "interfered" with the Sony/New World Contract or Sony/Willis Contract, Sony cannot be held liable in tort for interfering with its own contracts. *Cook*, 972 F.Supp. at 414–415. Sony owed no duty *not* to attempt settling Donald Willis' lawsuit. *See Echols*, 586 F.Supp. at 468. Plaintiffs' motion for leave to add a negligence claim will be denied for lack of a duty owing independent of the duties owning under the Sony/Willis Contract and Sony/New World Contract. *Foman*, 371 U.S. at 182, 83 S.Ct. 227; *Sinay*, 948 F.2d at 1041–42; *Head*, 870 F.2d at 1124.

### iii. Trespass to Chattel

■ Plaintiffs allege in their proposed Second Amended Complaint that Sony is liable for trespass to chattels for refusing to pay New World under the Sony/New World Contract, allowing New World to assert a lien against the plaintiffs' property, and thereafter attempting to force Donald Willis to settle his employment claims. A person is liable for trespass to a chattel to another person who is, or may by demand become, entitled to immediate possession of the chattel. *See* Restatement (Second) of Torts § 219 (1965). Again, plaintiffs do not dispute that New World's charges have yet to be fully paid. Plaintiffs' allegations do not overcome New World's superior right to retain the property as security for payment. Consequently, and despite the *plaintiffs'* settlement demand as referenced in the Second Amended Complaint, plaintiffs' proposed trespass to chattels claim is futile in that plaintiffs have not made direct or inferential allegations that they, as opposed to New World, are entitled to immediate possession of their household property. *DeLorean Motor Co.*, 991 F.2d at 1240. Plaintiffs' motion for leave to add a claim of trespass to chattels should be denied. *Foman*, 371 U.S. at 182, 83 S.Ct. 227; *Sinay*, 948 F.2d at 1041–42; *Head*, 870 F.2d at 1124.

### iv. Breach of Fiduciary Duty

Plaintiffs allege in their proposed Second Amended Complaint that Sony is liable for breach of fiduciary duties in that specifically named individuals repeatedly assured the plaintiffs that the plaintiffs would not be responsible for any costs associated with moving and storing their household goods, yet Sony refused to pay New World under the Sony/New World Contract. "A fiduciary relationship exists when there is a reposing of faith, confidence and trust and the placing of reliance by one upon the judgment and advice of another. Relief is granted when such position of influence has been acquired and abused, when confidence has been reposed and betrayed." ·*Smith v. Saginaw Savings and Loan Assoc.*, 94 Mich.App. 263, 274, 288 N.W.2d 613 (1979) (internal citation omitted). *See also Vicencio v. Ramirez*, 211 Mich.App. 501, 536 N.W.2d 280 (1995).

■ Plaintiffs do not allege that they relied upon the judgment and advice of the named Sony individuals in a reposing of faith, confidence and trust; plaintiffs simply allege that the individuals assured

them that they, the plaintiffs, would not have to pay any moving or storage expenses. This is not a situation where the named Sony individuals acquired influence over the plaintiffs' decision making processes—substituting Sony's judgment for the plaintiffs' judgement and then abusing that judgment—but rather a situation where Sony repeatedly "assured" the plaintiffs that Sony "would pay for all the moving and storage costs associated with moving Plaintiffs [sic] household goods from Virginia to Michigan." Proposed Second Amended Complaint, ¶ 79. Absent an allegation of the reposing of faith, confidence and trust upon Sony, or the placing of reliance by the plaintiffs on Sony's judgment and advice, plaintiffs' motion to add a breach of fiduciary duty claim should be denied. *Foman,* 371 U.S. at 182, 83 S.Ct. 227; *DeLorean Motor Co.,* 991 F.2d at 1240; *Sinay,* 948 F.2d at 1041–42; *Head,* 870 F.2d at 1124.

### v. Civil Conspiracy

 Plaintiffs allege in their proposed Second Amended Complaint that the Sony defendants conspired among themselves for the illegal purposes as set forth in the Second Amended Complaint i.e. tortious interference with contract. A claim of civil conspiracy without underlying wrongful acts is not actionable. *Roche v. Blair,* 305 Mich. 608, 613–614, 9 N.W.2d 861 (1943). To sustain an actionable tort claim of civil conspiracy, the plaintiff must prove a separate actionable tort. *Early Detection Center, P.C. v. New York Life Ins. Co.,* 157 Mich.App. 618, 631, 403 N.W.2d 830 (1986). Plaintiffs only remaining claims are breach of contract and replevin, and promissory estoppel as alleged by only Donald Willis. All of the Sony defendants are parties to the Sony/Willis Contract and Sony/New World Contract as a matter of law. *See* Section III, C, vii, *supra.* The Sony defendants cannot be held liable for conspiring to breach their own contract. *See Northern Plumbing and Heating Inc. v. Henderson Brothers, Inc.,* 83 Mich.App. 84, 91, 268 N.W.2d 296 (1978) (holding that tort of conspiring to breach contract requires conspiracy between party to contract and stranger to the contract). Promissory estoppel sounds in contract. *See Huhtala v. Travelers Ins. Co.,* 401 Mich. 118, 133, 257 N.W.2d 640 (1977). Unlike a tort claim, a successful replevin claim is limited in damages to the recovery of the lost value of the property itself plus interest. *See J.L. Hudson Co.,* 255 Mich. at 470, 238 N.W. 243; *Betman,* 266 Mich. at 25, 253 N.W. 201. In that the Sony defendants cannot be found liable for conspiring to breach their own contracts and promises, and because the plaintiffs have not alleged an actionable underlying tort claim, the plaintiffs' motion to add a civil conspiracy claim should be denied. *Foman,* 371 U.S. at 182, 83 S.Ct. 227; *DeLorean Motor Co.,* 991 F.2d at 1240; *Sinay,* 948 F.2d at 1041–42; *Head,* 870 F.2d at 1124.

### B. Motion to Compel Discovery

Plaintiffs move to compel Sony to produce Veronica Gargone, Larry Rubin, Andrew Zaffron, and Sony's Custodian of Records for the taking of their depositions. Plaintiffs also move to compel Sony to submit supplemental responses to plaintiffs' First Request for Admissions, First Request for Production of Documents, and First Set of Interrogatories, and to submit responses to plaintiffs' Second Set of Discovery Requests.

Plaintiffs filed this lawsuit on April 30, 1999, and filed their First Amended Complaint on June 15, 1999. On October 7, 1999, the court entered a scheduling order establishing that witness lists were to be exchange by December 1, 1999, discovery cutoff would be on January 14, 2000, the dispositive motion cutoff date would be March 1, 2000, and trial would be held on June 19, 2000. On November 30, 1999, the court entered a stipulated order extending the time for filing witness lists to December 15, 1999. On February 23, 2000, the court entered a stipulated order again

amending the scheduling order and requiring Sony to respond to the plaintiffs' First Requests for Admissions, First Set of Interrogatories, and Document requests by March 15, 2000, resetting the discovery cutoff date to April 28, 2000, extending the dispositive motion cutoff date to June 9, 2000, and rescheduling trial for September 25, 2000. Sony timely moved for partial summary judgment on June 9, 2000.

■■■■ A district court enjoys broad discretion in managing discovery. *See Ghandi v. Police Dep't of City of Detroit*, 747 F.2d 338, 354 (6th Cir.1984). "[I]t is well established that the scope of discovery is within the sound discretion of the trial court. Accordingly, denials of motions to compel discovery are reviewed only for an abuse of discretion." *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir.1993) (internal citations omitted). A district court may properly deny a motion to compel discovery where the motion to compel was filed after the close of discovery. *See Ginett v. Federal Express Corp.*, 1998 WL 777998, 166 F.3d 1213 (6th Cir. Oct. 21, 1998).

The February 23, 2000 stipulated order set the discovery cut-off date at April 28, 2000. Plaintiffs filed the instant motion to compel discovery on August 23, 2000, four months after the close of discovery and just five days before the hearing on Sony's motion for summary judgment. Plaintiffs did not file Rule 56(f) affidavits to support their opposition to Sony's motion for partial summary judgment. Plaintiffs were aware as early as February 1, 2000 that Gargone, Rubin, Zaffron, and Sony's Custodian of Records would not be available for deposing on the requested January 2000 dates. Although Sony was ordered to respond to plaintiffs' First Requests for Admissions, First Set of Interrogatories, and Document requests by March 15, 2000, and discovery closed on April 28, 2000, plaintiffs waited until August 23, 2000 to move to compel discovery. Plaintiffs filed a Second Set of Discovery Requests on May 11, 2000, well after the time for discovery had expired.

■ Plaintiffs point to an April 27, 2000 letter from plaintiffs' counsel to Sony's counsel wherein plaintiffs' counsel states that "We agreed that I would present to you a settlement and that we would extend the discovery deadline by two weeks . . . ." Plaintiffs' Exhibit E. This agreement was not approved by the court. Unlike the past stipulated extensions, the parties did not seek the court's permission for such an extension. A scheduling order shall not be modified except by leave of court. *See* Fed.R.Civ.P. 16(b). Further, even assuming the court would have granted the two week extension, discovery would have closed on May 12, 2000. Plaintiffs made their Second Set of Discovery Requests on May 11, 2000, virtually ensuring that discovery would not close on schedule. Plaintiffs then waited until five days before the hearing on Sony's motion for summary judgment—August 23, 2000—before first filing their motion to compel discovery. Considering the limited issues that remain pending in this matter, the timing of plaintiffs' motions relative to the close of discovery, and the impending trial of this matter, plaintiffs' motion to compel discovery will be denied. *Ginett*, 1998 WL 777998, 166 F.3d 1213.

### C. Motion to Amend Scheduling Order and Change Trial Date

The court's scheduling order must be modified to provide new dates for the Final Pretrial Order, the Final Pretrial Conference, and trial. They are as follows:

**Final Pretrial Order is due on:** 12–11–00

**Final Pretrial Conference will be held:** 12–18–00 at 10:00 AM in the Ann Arbor Courthouse, 3rd Floor.

**Jury Trial will begin:** 1–2–01 at 9 AM in Detroit (Trailing Docket)

### V. CONCLUSION

Pursuant to the court's July 5, 2000 stipulated orders, defendant New World Van Lines, and New World's counter-

claims, are hereby DISMISSED with prejudice. Plaintiffs' claims of claim and delivery under M.C.L. § 600.2920 as alleged in Count IV are also hereby DISMISSED with prejudice pursuant to the July 5, 2000 orders.

Defendants Sony's motion for partial summary judgment is hereby GRANTED, IN PART, as to plaintiffs' claims for emotional distress damages as alleged in Count I, statutory conversion under M.C.L. § 600.2919a as alleged in Count III, intentional infliction of emotional distress as alleged in Count V, plaintiff Teresita Willis' claim of promissory estoppel as alleged in Count VI, plaintiffs' claims of bad faith/silent fraud as alleged in Count VII, tortious interference as alleged in Count VIII, and exemplary damages as alleged in Count IX. Counts III, V, VII, VIII, and IX, as well as Count I seeking emotional distress damages and Count VI alleging promissory estoppel on behalf of Teresita Willis, are hereby DISMISSED with prejudice. The remainder of Sony's motion is hereby DENIED.

Plaintiffs' motion for leave to file a Second Amended Complaint is hereby DENIED. Plaintiffs' motion to compel discovery is hereby DENIED. The court's scheduling order is hereby MODIFIED as set forth herein. This matter will proceed to trial on the plaintiffs' remaining claims of breach of contract and replevin as alleged in Count I, and plaintiff Donald Willis' claim of promissory estoppel as alleged in Count VI.

SO ORDERED.